Gary **BOLTON** and Wayne Lamberth, Appellants,

v.

**STATE** of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee, Nashville.

March 26, 1981.

Permission to Appeal Denied by Supreme Court As to Lamberth, June 1, 1981.

Clyde W. Richert, III, Springfield, for appellant Bolton.

William R. Goodman, III, Springfield, for appellant Lamberth.

William M. Leech, Jr., Atty. Gen., James A. DeLanis, Asst. Atty. Gen., Nashville, O'Brien Price, Dist. Atty. Gen., Lawrence, Ray Whitley, Asst. Dist. Atty. Gen., Springfield, for appellee.

## OPINION

DUNCAN, Judge.

The defendants, Gary Bolton and Wayne Lamberth, were convicted of grand larceny and each received a penitentiary sentence of not less than five (5) years nor more than seven (7) years.

In this appeal, the defendants raise complaints about the indictment, the identification testimony, and the introduction of certain documents into evidence. We find no merit to their complaints.

The defendants first insist that there is a fatal variance between the allegations in the indictment and the proof. They argue that the indictment alleged the stolen property to be owned by an individual while the proof showed that it was owned by a corporation.

The indictment alleged the theft of "One 1973 Ford model two-ton truck bearing VIN VF60DYR41449 and assorted items of furniture including wood tables, rockers, chairs, bar stools and upholstered furniture, all of the value of $14,500.00 of the personal goods and chattels of William Hinkle d/b/a Hinkle Chair Company...."

Mr. William Hinkle testified that he was the sole owner of the chair company and that his business was incorporated. Hinkle Chair Company, Inc., owned the truck and furniture. Apparently the chair company was commonly referred to as the "Hinkle Chair Company" because that was the term used by all of the witnesses when referring to it. The evidence showed that the name "Hinkle Chair Company" was written on the side of the stolen truck.

Tennessee follows a rather stringent variance rule, and if a person or thing necessary to be mentioned in an indictment is described with greater particularity than is requisite, such person or thing must be proved exactly as described in the indictment. *Johnson v. State*, 596 S.W.2d 97 (Tenn.Crim.App.1979); *Martin v. State*, 542 S.W.2d 638 (Tenn.Crim.App.1976). Our courts have held that if the ownership allegation in the indictment is laid in one named owner, and the proof shows the stolen property is titled in the name of some other owner, then the variance is fatal. *Daughtery v. State*, 221 Tenn. 56, 424 S.W.2d 414 (1968); *Johnson v. State*, 148 Tenn. 196, 253 S.W. 963 (1923); *Parton v. State*, 3 Tenn.Crim.App. 191, 458 S.W.2d 646 (1970).

In *Daughtery v. State, supra,* the Court held that if the name of the owner of the stolen property is alleged in the indictment, even though unnecessarily, it becomes a part of the description of the property and in this event, the proof must conform to the

indictment. In *Daughtery*, title to a stolen automobile was shown to be in a person other than the person named in the indictment. The court reversed and remanded because of the variance.

In *Johnson v. State, supra*, the Court pointed out that strict conformity between the evidence and the indictment was required so as to protect the accused under a plea of former conviction or former acquittal. In that case, the court found a fatal variance where the indictment charged the theft of an automobile belonging to a named corporation which was alleged in the indictment to be incorporated under the laws of Tennessee, while the proof showed that the corporation was chartered under the laws of Indiana.

In *Parton v. State, supra*, our Court was concerned with a case where the indictment alleged the stolen property to be owned by Janco Cigarette Service, Inc., a corporation, while the proof showed that it was owned by an individual, James Strang, who did business under the name of Janco Cigarette Service. Our Court held this variance to be fatal.

The defendants, relying on the *Daughtery, Johnson* and *Parton* cases, insist that a fatal variance exists in the present case. However, the State insists that no fatal variance is present and relies on the case of *State v. Morrow*, 530 S.W.2d 60 (Tenn.1975).

In *Morrow*, the court reiterated the reasons why the proof in a case must conform to the ownership allegations in the indictment by saying:

> The reasons for requiring allegations and proof of ownership of stolen property, in addition to protecting the defendant under a plea of former conviction or former acquittal, are said to be to enable the jury to determine whether the property proved to be concealed is the same property that was stolen and to inform the defendant of the precise charge against him so that he may prepare a defense. 530 S.W.2d at 64.

In *Morrow*, the indictment alleged ownership of the stolen property in the name of "West View School." While there was no proof as to the school's legal status, *i. e.*

whether it was an incorporated or unincorporated association or a public or private school, there was proof to the effect that the property was taken from "West View School," and that this name was stenciled on the property. Even though T.C.A. § 49–813 provided that the custody of all school property was in the County Board of Education, the court nevertheless found no problem in this case and held that the designation "West View School" was sufficient to protect the defendant from a future prosecution, to advise him of the charge against him, and to enable the jury to determine that the property from the school was identical to that concealed by the defendant.

While we find the *Morrow* language and holding to be helpful to us in the present case, we do not adopt the State's suggestion that *Morrow* has eroded the holdings of the *Daughtery, Johnson* and *Parton* cases. Rather, our opinion is that both *Morrow* and the present case are distinguishable from those cases.

The *Daughtery, Johnson* and *Parton* cases all dealt with factual situations that obviously showed fatal variances between the ownership allegations and the proof. In *Morrow* there was no variance, fatal or otherwise, and the court specifically recognized such by saying: "The Court of Criminal Appeals found, and the record is indeed uncontradicted on the point, that there was no variance between the indictment and the evidence itself." 530 S.W.2d at 61. In our opinion, since *Morrow* involved no variance, and since *Daughtery, Johnson* and *Parton* did, then it cannot be reasonably argued that Morrow has eroded the holdings of those cases.

Thus, while recognizing the continuing viability of the holdings made in *Daughtery, Johnson* and *Parton*, we nevertheless find them inapplicable to the case at hand because of the different factual situation involved here.

We first note that the descriptive phrase in the indictment, "d/b/a Hinkle Chair Company," following Mr. Hinkle's name may be interpreted as connoting a corpora-

tion because the terms "company" and "corporation" are used interchangeably. In *Stafford v. State*, 489 S.W.2d 46 (Tenn. Crim.App.1972), this Court held that the word "company" in a firm's name carries with it the presumption that the firm is a "corporation."

Further, our research discloses that our Court has previously dealt with a case in which the facts were practically identical to those in the present case. *See Lewallen v. State*, No. 478 (Tenn.Crim.App., Jackson, December 7, 1976—opinion by Judge Dwyer, with Judges Walker and Tatum concurring). While this case is unpublished, we find the language used therein to be instructive and we agree with the Court's holding. In that case, this Court found no fatal variance where the indictment reflected ownership of a stolen automobile in "Fay Sims, doing business as Fay's Motor Company" while the proof showed that the car had been stolen from "Fay's Motor Company" and that the car was titled to "Fay's Motor Company." In holding that the defendant could successfully prevail on a plea of autrefois convict if another prosecution was attempted for the theft of the car as alleged in the indictment, the Court quoted the rule as to variance, as stated in *Pope v. State*, 149 Tenn. 176, 178–79, 258 S.W. 775 (1923):

> ... The rule invoked is that there must be sufficient facts alleged to reasonably identify the special transaction upon which the defendant is being prosecuted, not only that he may know whereof he is accused and may prepare his defense, but also in case of a subsequent prosecution it may be made to appear whether he was prosecuted twice for the same offense.

In the present case, since the corporate name "Hinkle Chair Company" appears as part of the descriptive allegation and since the proof showed that the identification number on the stolen truck conformed exactly to the identification number alleged in the indictment, this would certainly identify this offense so as to provide the defendants with protection against any future attempt to prosecute them for the theft of this same property.

Additionally, we find it significant that the proof in the present case showed that Mr. Hinkle was the sole owner of the corporation, and the business was commonly known and referred to as the "Hinkle Chair Company." The proof also showed that Mr. Hinkle actively managed and conducted the business of the corporation. Therefore, it may reasonably be said that due to his relationship with the Hinkle Chair Company, he had custody, possession and a special interest in the stolen property sufficient to validate the allegation of ownership as stated in the indictment. *See Watson v. State*, 207 Tenn. 581, 341 S.W.2d 728 (1960); *Conner v. State*, 531 S.W.2d 119 (Tenn.Crim. App.1975); *Fiedler v. State*, 479 S.W.2d 814 (Tenn.Crim.App.1972).

■ From all of the foregoing, we conclude that the allegation that the stolen property belonged to "William Hinkle, d/b/a Hinkle Chair Company," sufficiently informed the defendants of the precise charge against them, sufficiently enabled the jury to determine that the property proved to have been stolen was the same property alleged to have been stolen, and would sufficiently protect the defendants under a plea of former conviction in any future prosecution. *State v. Morrow, supra.* We find no fatal variance to be present in this case.

Next, the defendants say that the witnesses' in-court identifications of them were tainted by reason of the procedures used in a photographic identification conducted during the investigation of the case.

■ At the trial, both Elga Napier and Vester Roberts identified the defendants as the persons who had come to their respective places of business in Kentucky and had sold to them items of furniture belonging to the victim. It was also disclosed that a couple of days after these witnesses had purchased these items of furniture, the police exhibited photographs of the defendants to these witnesses, and each of them made a positive identification of the defendants. The record is unclear as to the number of photographs shown to each witness or whether a photograph of anyone

else was included in the photographs which were shown to the witnesses. However, assuming *arguendo* that the only photographs shown to the witnesses were photographs of the defendants, this procedure, although suggestive, does not give rise to a substantial likelihood of irreparable misidentification in the present case.

The test of whether use of impermissibly suggestive identification procedures will require exclusion of a witness's in-court identification is whether the in-court identification is reliable under the totality of the circumstances, including the opportunity of the witness to view the offender at the time of the crime, the witness's degree of attention, the accuracy of the prior description of the offender, the level of certainty of the witness at the confrontation, and the length of time between the crime and the confrontation. *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Manson v. Brathwaite,* 423 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Rippy v. State,* 550 S.W.2d 636, 639–40 (Tenn.1977).

In the present case, the independent origin of each witness's in-court identification of the defendants was fully established by the proof. Both witnesses had a full opportunity to view the defendants during the time that the defendants were engaged in the transaction with them. The defendants were in their presence for approximately one and one-half to two hours on this occasion. Both made an identification of the defendants shortly after the crime. In fact, Napier had previously transacted business with these same defendants some one and one-half weeks prior to the present event, and on the present occasion. Napier had ridden with them in the victim's truck from his place of business to Roberts' place of business. From the totality of the circumstances in this case, we find that the likelihood of a misidentification is nonexistent.

In their next issue, both defendants contend that the trial court erroneously allowed a copy of a certain receipt to be admitted into evidence. When the defendants sold some of the stolen property to Vester Roberts, Mr. Roberts asked them for a receipt. The defendants did not have a ticket book, so Mr. Roberts got one of his own tickets on which he listed the items of furniture that he had just purchased from the defendants. After Mr. Roberts completed listing the items of furniture on the receipt, defendant Lamberth signed the receipt. At trial, Mr. Roberts had a photostatic copy of this receipt, but the original was at his store. However, Mr. Roberts identified the copy he had at trial as being an exact copy of the original.[1] The defendants objected to this evidence on the basis that this photostatic copy was not the best evidence.

Generally, the original writing, rather than a copy or substitute thereof, is preferred where the terms of the writing are in issue and the writing is being offered for the purpose of proving its terms. The rationale behind this rule is to guard against mistransmissions and against fraud or imposition. *See generally McCormick on Evidence* § 197 (1954); *United States v. Wood,* 14 Pet. 430 (39 U.S.) 10 L.Ed. 527 (1840); *United States v. Manton,* 107 F.2d 834 (2nd Cir. 1938). In the present case, the copy of the receipt which was admitted into evidence was a photostatic copy, hence there is no danger of a mistransmission of the terms of the original. Further, there is absolutely no suggestion in the record that there was any fraud or imposition concerning the copy of the receipt.

Since the advent of photocopying and other types of mechanical reproductions, many jurisdictions have relaxed the requirements of the best evidence rule where neither the accuracy of the contents nor the authenticity of the original is contested. *See e. g. Fed.R.Evid.* 1003; *Wilson v. State,*

---

1. Subsequent to defendant Lamberth signing the receipt, Mr. Roberts had written a couple of names and phone numbers on the original receipt. These additions, which also appeared on the photostatic copy, were made in conjunction with Mr. Roberts' attempt to locate the rightful owner of the subject merchandise, and they were clearly marked, explained, and distinguished for the benefit of the jury.

169 Ind.App. 297, 348 N.E.2d 90 (1976); *State v. St. Amand*, 274 So.2d 179 (La.1973); *State v. Vincent*, 338 So.2d 1376, 1381 (La. 1976); *Rachel v. Commonwealth*, 523 S.W.2d 395 (Ky.App.1975); *see also McCormick on Evidence* §§ 206, 209 (1954). We also note that photostatic copies of certain documents and records are admissible in Tennessee under conditions prescribed in T.C.A. §§ 24–7–109, 110, although the record does not contain sufficient facts for us to say whether either of these statutes are applicable in the present case.

■ In our opinion, since there was no dispute over the accuracy of the photostatic copy of the receipt nor any question about the authenticity of the original receipt, the trial judge, who must necessarily be given wide discretion in deciding the admissibility of evidence, will not be put in error.

■ Defendant Bolton further complains that the introduction of copies of certain inventory sheets violated the best evidence rule. The evidence shows that these copies were carbon copies of the originals. Our cases have held that carbon copies of documents are considered duplicate originals and may be introduced into evidence without accounting for the non-production of the originals. *State v. Standard Oil Company*, 120 Tenn. 86, 110 S.W. 565 (1908), *aff'd.* 217 U.S. 413, 30 S.Ct. 543, 54 L.Ed. 817 (1910); *State v. Stockton*, 38 Tenn.App. 90, 270 S.W.2d 586 (1954).

■ Finally, defendant Bolton, who prior to trial had filed a discovery motion, contends that the State should have informed him of the receipt which was signed by Lamberth. Initially we note that the only ground on which Bolton objected to this receipt was that it was violative of the best evidence rule. If the defendant had additional grounds on which he wished to exclude this receipt, he was under a duty to inform the trial judge of those grounds. *See generally* D. Paine, *Tennessee Law of Evidence*, §§ 180–181 (1974). Since the defendant did not apprise the court that he wished to exclude this receipt because of the State's alleged violation of the discovery order, he may not raise this issue on appeal. Moreover, Bolton claims that if he

had known about this receipt prior to trial, he would have requested the trial court to sever his case from that of his co-defendant Lamberth. In this regard, we point out that Rule 14(a) of the Tennessee Rules of Criminal Procedure provides, in part, as follows:

A defendant's motion for severance of offenses or defendants must be made before trial, *except that a motion for severance may be made before or at the close of all evidence if based upon a ground not previously known. Severance is waived if the motion is not made at the appropriate time.* (emphasis added).

Thus, if Bolton felt that this receipt could somehow support a motion to sever his case from that of Lamberth's, then he was under a duty to make such motion at the point in the trial when he learned of the receipt. Since no motion for severance or mistrial was timely made, Bolton may not now complain about this issue. *T.R.A.P.* 36(a).

We overrule all of the defendants' complaints. The judgment of the trial court is affirmed.

TATUM and BYERS, JJ., concur.