IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 19, 2002

## EDDIE L. COLEY, JR. v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Williamson County**
**No. 201-63      Donald P. Harris, Judge**

---

**No. M2001-03130-CCA-R3-PC - Filed September 4, 2002**

---

The petitioner, Eddie L. Coley, Jr., was convicted of aggravated robbery in 1996 and sentenced to confinement for twelve years. Following an unsuccessful appeal of his conviction, he filed a petition for post-conviction relief, alleging that his trial counsel was ineffective for not filing a motion to suppress a photographic lineup and not allowing him to testify at his trial. The post-conviction court denied the petition; and, following our review, we affirm that denial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID G. HAYES and ROBERT W. WEDEMEYER, JJ., joined.

J. Britt Phillips, Franklin, Tennessee, for the appellant, Eddie L. Coley, Jr.

Paul G. Summers, Attorney General and Reporter; Helena Walton Yarbrough, Assistant Attorney General; Ronald L. Davis, District Attorney General; and Derek K. Smith, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The petitioner was indicted for the July 15, 1995, aggravated robbery of two Baskin-Robbins ice cream shop employees in Brentwood. His first trial resulted in a mistrial. However, he was convicted in the second, the facts of which were set out in State v. Coley, 32 S.W.3d 831, 832-33 (Tenn. 2000):

> Coley does not challenge the sufficiency of the evidence upon which he was convicted; thus, only those facts necessary to this appeal are provided. On July 15, 1995, Sarah Blumberg and Jennifer McMillen were working at an ice cream shop in Brentwood. At approximately 1 p.m., a male entered the store. After placing an order, the male brandished a gun and instructed one of the employees

to put the store's money into a bag.  The male then forced both employees into the store's walk-in freezer where they remained until they heard a customer enter the store.  After exiting the freezer, they called the police.

The police uncovered no physical evidence at the crime scene.  Both employees, however, separately described the robber as an obese "Black" man around 5' 9" tall and about twenty years old.  The employees then helped the police prepare separate composite pictures of the robber.  Nine days after the robbery, Blumberg observed a photographic line-up which included Coley's picture.  She identified him as the robber.  Five months after the robbery, McMillen saw the same photographic line-up.  She too identified Coley.

At trial, the critical issue was identification.  The State's case relied heavily on Blumberg's and McMillen's pre-trial and in-court identifications of Coley.  Coley, on the other hand, offered an alibi defense, maintaining that another person had committed the robbery.  Coley desired to adduce the testimony of Michael G. Johnson, Ph.D., J.D., an expert in the field of eyewitness identification.  The State objected to Johnson's testimony on the ground that it would not assist the jury in deciding the identification issue.  The trial court agreed and refused to admit Johnson's testimony.

The trial court, nevertheless, allowed Johnson to make a proffer of his testimony for the record.  The proffered testimony included information covering the following topics:

1. the process of eyewitness identification;

2. the relationship between stress and memory of an event;

3. cross-racial identification;

4. the confidence the witnesses have in the accuracy of their identifications and the actual accuracy of their identifications;

5. the effect of time on the accuracy of memory;  and

6. the suggestibility of the photographic line-up used in this case.

Following his unsuccessful appeal, the petitioner filed a petition for post-conviction relief, presenting a number of claims as to ineffectiveness of trial counsel. After the appointment of counsel, and the filing of amended petitions, the post-conviction court limited the hearing to the claims that trial counsel was ineffective by not filing a motion to suppress the photographic lineup and not allowing the petitioner to testify at his trial. The hearing subsequently was held on November 21, 2001.

At the hearing, the petitioner's trial attorney testified that he had been licensed to practice law since 1976, including as an assistant district attorney for six years and as an assistant public defender for ten years, and had participated in seventy to seventy-five trials. He said that the hearing exhibit from which the two victims identified the petitioner had the petitioner's photograph placed in the middle of the top row. We note that this exhibit consists of six photographs of young men of the same race, and of approximately the same age and facial shape. Three of the men, including the petitioner, were wearing black, or very dark, T-shirts. The petitioner's T-shirt bears a design of some sort, only the upper portion of which is shown in the photograph, consisting of a blue background with lighter blue vertical random stripes and small patches of yellow, reddish-orange, and black. No writing appears on the visible portion of the petitioner's shirt. Trial counsel testified that the victims had said, both at the preliminary hearing and at the trial, that the robber wore a black T-shirt bearing the slogan "sight for sore eyes," and that the shirt did not have a design. Trial counsel said that he had considered filing a motion to suppress the photo lineup as being overly suggestive and had sent letters to five to ten psychologists soliciting their opinions as to the fairness of the lineup. He made several trips to Knoxville to meet with Dr. Michael G. Johnson, a clinical psychologist, who said that the lineup was not as suggestive as others he had seen. Because of Dr. Johnson's opinion and trial counsel's recognition of the similarities of the men in the photo lineup, he concluded that he did not have a basis for seeking to suppress it.

As to the petitioner's not testifying at the trial, counsel said that the petitioner had previous armed robbery convictions and had not asked to testify, telling counsel that he would do whatever they thought in that regard. Counsel said he told the petitioner that he had to make the decision as to whether to testify, but counsel's recommendation was that he not do so. He said that certain of the petitioner's robbery convictions involved his using "very similar" techniques to that for which he was being tried, resulting in danger in the petitioner's testifying. Trial counsel said that he had alibi witnesses whom he thought would be convincing and did not see how the petitioner's testimony would help the defense. Also, he was concerned that the petitioner might say something during his testimony which would harm the case.

The petitioner said he told counsel that he wanted to testify and that counsel then moved to prevent the prior convictions from being utilized at the trial, but the trial court denied the motion. He wanted a motion to suppress filed "to let [the judge] make the decision" as to it.

-3-

## ANALYSIS

### Ineffective Assistance of Counsel

In order to determine the competence of counsel, Tennessee courts have applied standards developed in federal case law. See State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The United States Supreme Court articulated the standard in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), which is widely accepted as the appropriate standard for all claims of a convicted petitioner that counsel's assistance was defective. The standard is firmly grounded in the belief that counsel plays a role that is "critical to the ability of the adversarial system to produce just results." Id. at 685, 104 S. Ct. at 2063. The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687, 104 S. Ct. at 2064. The Strickland Court further explained the meaning of "deficient performance" in the first prong of the test in the following way:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. . . . No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant.

Id. at 688-89, 104 S. Ct. at 2065. The petitioner must establish "that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms." House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (citing Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996)).

As for the prejudice prong of the test, the Strickland Court stated: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S. Ct. at 2068; see also Overton v. State, 874 S.W.2d 6, 11 (Tenn. 1994) (concluding that petitioner failed to establish that "there is a

reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different").

Courts need not approach the <u>Strickland</u> test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697, 104 S. Ct. at 2069; <u>see also</u> <u>Goad</u>, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

By statute in Tennessee, the petitioner at a post-conviction relief hearing has the burden of proving the allegations of fact by clear and convincing evidence. <u>See</u> Tenn. Code Ann. § 40-30-210(f) (1997). A petition based on ineffective assistance of counsel is a single ground for relief, therefore all factual allegations must be presented in one claim. <u>See</u> Tenn. Code Ann. § 40-30-206(d) (1997).

We note that when post-conviction proceedings have included a full evidentiary hearing, as in this case, the trial judge's findings of fact and conclusions of law are given the effect and weight of a jury verdict, and this court is "bound by the trial judge's findings of fact unless we conclude that the evidence contained in the record preponderates against the judgment entered in the cause." <u>Black v. State</u>, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, <u>see</u> <u>Strickland</u>, 466 U.S. at 690, 104 S. Ct. at 2066, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. <u>See</u> <u>Hellard v. State</u>, 629 S.W.2d 4, 9 (Tenn. 1982). The fact that a strategy or tactic failed or hurt the defense does not alone support the claim of ineffective assistance of counsel. <u>See</u> <u>Thompson v. State</u>, 958 S.W.2d 156, 165 (Tenn. Crim. App. 1997). Finally, a person charged with a criminal offense is not entitled to perfect representation. <u>See</u> <u>Denton v. State</u>, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). As explained in <u>State v. Burns</u>, 6 S.W.3d 453, 462 (Tenn. 1999), "[c]onduct that is unreasonable under the facts of one case may be perfectly reasonable under the facts of another."

We now will consider the two claims of ineffective assistance of counsel for which proof was presented at the hearing.

**A. Failure to File Motion to Suppress Photographic Lineup**

The petitioner argues on appeal that his trial counsel was ineffective for not filing a motion to suppress the photographic lineup identification. The State responds that counsel was not ineffective in declining to file a meritless motion. As to this issue, we agree with the State.

First, we note that, according to the opinion of our supreme court in this matter, the two victims identified the petitioner as the robber, both upon viewing the photographic lineup and at the second trial. Additionally, during the post-conviction hearing, trial counsel testified that the victims also had identified the petitioner at the preliminary hearing and at the first trial of the matter, which

had resulted in a hung jury. It was following that first trial that the petitioner had written trial counsel requesting the filing of a motion to suppress. Given this array of identifications of the petitioner by the victims, we have difficulty in concluding that the defense would have been strengthened by suppression of the photographic lineup unless the defense also could have established that the victims' subsequent identifications of the petitioner were so tainted by their viewing the photographs that those identifications, too, must be suppressed. In his testimony, the petitioner did not recognize this additional requirement before the victims' in-court identifications also could be suppressed.

In his letter to the petitioner of January 2, 1996, explaining why he was not pursuing a motion to suppress, trial defense counsel demonstrated that he had given substantial thought as to how to best deal with the victims' identification of the petitioner. Explaining the holdings of a number of lineup identification cases, including Bolton v. State, 617 S.W.2d 909 (Tenn. Crim. App. 1981), and State v. Beal, 614 S.W.2d 77 (Tenn. Crim. App. 1981), counsel opined in his letter that "there was nothing done by the Brentwood Police Department which remotely [could] be defined as something that would be so suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Having viewed the photographs comprising the lineup shown to the victims, we agree with counsel's assessment that the photographs are not so suggestive as to give rise to a successful suppression motion. There is no basis for our concluding that simply because the robber was wearing a black T-shirt with a slogan, the victims both then identified the petitioner because, in his photograph, he was wearing a black T-shirt with some sort of design.

Trial counsel decided to deal with the victims' identifications of the petitioner by attempting to present expert testimony as to unreliability of eyewitness identifications. The reasonableness of this effort is demonstrated by the fact that, in the opinions of this court and of our supreme court affirming the conviction, one member of our panel and two members of the supreme court concluded that the trial court should have conducted a hearing, pursuant to the holding of our supreme court in McDaniel v. CSX Transportation, Inc., 955 S.W.2d 257 (Tenn.1997), as to whether Dr. Johnson should have been allowed to testify as to eyewitness identification. See State v. Coley, 32 S.W.3d 831, 839-40 (Tenn. 2000); State v. Eddie L. Coley, Jr., No. 01C01-9707-CC-00270, 1998 Tenn. Crim. App. LEXIS 1082, at *21-*24 (Tenn. Crim. App. Oct. 13, 1998), perm. to appeal granted (Tenn. Apr. 19, 1999).

As to this issue, the post-conviction court found as follows:

1. [Petitioner's] attorney at trial . . . was not ineffective for failing to file a motion to suppress a photographic lineup that included [petitioner], as there was no basis for such motion. Moreover, [petitioner] showed no prejudice with respect to the issue. The Court would not have granted the motion to suppress, had it been filed.

The record fully supports this finding.

## B. Denying the Petitioner His Right to Testify at Trial

As his second issue, the petitioner argues that he was denied his right to testify at the trial. The State responds that, trial defense counsel having testified that it was the petitioner's decision not to testify, this issue is as to credibility, which the trial court resolved in favor of trial defense counsel.[1]

As we have previously stated, the record reflects that, at the time of this trial, the petitioner had other aggravated robbery convictions, which the trial court had determined could be utilized if the petitioner testified. Additionally, trial defense counsel testified that there were sufficient similarities in certain of the other robberies with the instant offense that counsel was concerned other convictions could be utilized not only for impeachment as to credibility but also to establish the identity of the petitioner as the robber of the Baskin-Robbins. Trial defense counsel also said that he believed his alibi witnesses who testified at the second trial were credible, as evidenced by the hung jury at the first trial during which they had testified. Although the petitioner honestly may believe that his testimony at the second trial, professing that he was elsewhere at the time of the aggravated robbery, would have underscored the similar testimony of his alibi witnesses, we believe that there would be virtual unanimity among defense lawyers that his credibility would have been substantially blunted by his prior aggravated robbery convictions, and even more so if the prosecution had presented proof as to the similarities between the previous robberies and that for which the petitioner was being tried.

As to this claim, the post-conviction court determined both that the petitioner's trial attorney would have allowed him to testify, had he advised counsel that he wished to do so, and that he failed to show that he was prejudiced by not testifying. The record fully supports these conclusions as well.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we conclude that the petitioner has failed to establish either that trial counsel was ineffective or that he was prejudiced by counsel's alleged inactions. We affirm the denial of post-conviction relief.

_____
ALAN E. GLENN, JUDGE

---

[1] The trial, upon which these allegations are based, occurred in 1996, before our supreme court had set out in Momon v. State, 18 S.W.3d 152, 162 (Tenn. 1999), the procedure to be followed when a defendant elects not to testify.