IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 19, 2005

## STATE OF TENNESSEE v. CLARENCE MABON

**Appeal from the Criminal Court for Shelby County**
**No. 03-02347      J. C. McLin, Judge**

---

**No. W2004-01880-CCA-R3-CD  - Filed June 6, 2005**

---

A Shelby County Criminal Court jury convicted the defendant, Clarence Mabon, of two counts of aggravated robbery, a Class B felony. The trial court merged the two offenses and sentenced him as a Range I, standard offender to eight years in the Department of Correction. On appeal, the defendant contends that the evidence is not sufficient to support his conviction and that a fatal variance exists between the indictment and the proof presented at trial. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ALAN E. GLENN, J., joined.

Robert Wilson Jones, District Public Defender; Garland Ingram Erguden, Assistant Public Defender (on appeal); and Trent Hall, Assistant Public Defender (at trial), for the appellant, Clarence Mabon.

Paul G. Summers, Attorney General and Reporter; Seth P. Kestner, Assistant Attorney General; William L. Gibbons, District Attorney General; and Vanessa D. King, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case relates to the armed robbery of a McDonald's restaurant on Poplar Street in Memphis, Tennessee, on November 23, 2002. Alisha Jenkins testified that she was working as the counter clerk at the McDonald's on the night of the robbery. She said she was sixteen years old at that time and had been working at the restaurant for three weeks. She said the defendant came to the counter and asked for a glass of water. She said that when she gave him a cup of water, he left the counter and walked toward the rear of the restaurant. She said that approximately one hour later, he returned to the counter and ordered some food. She said that when she told him the cost of his order, he leaned on the counter and said, "This a robbery." She said she stepped back and looked at her manager, who was busy preparing french fries. She said that she looked back to the robber

and he said, "Don't be stupid." She said she returned to the cash register and started pushing buttons in an attempt to open the register. She said that he asked what was wrong and that she replied she was frightened. She said the robber had a two-barreled, "long" gun in his duffle bag. She said the gun was inside the duffle bag and covered with something. She said that she handed him the money in the register when it opened, which the manager saw. She said the manager approached them and asked, "Alisa [sic], what you doing?" and that she replied, "We just robbed." She said that the robber left through the back entrance facing the library and that her manager pressed the alarm buttons located at the register and the drive-through window. She said the police arrived shortly thereafter. She said the robbery occurred at approximately 7:00 or 8:00 p.m.

Ms. Jenkins testified that the police came to her house with photographs and that she was able to identify the robber in one of the photographs. She said that later she was asked to come to court to identify the person who committed the robbery and that the man she identified was the defendant. She said that she was afraid when the defendant came into the McDonald's with the gun because she believed the defendant might shoot her, even if she gave him the money.

On cross-examination, Ms. Jenkins testified that the defendant was wearing a cap and a blue South Pole sweater. She said that no customers were present during the time the defendant was in the restaurant.

Eugenia Threat testified that while she was working at the McDonald's drive-through window on the evening of the robbery, she observed Ms. Jenkins handing money from her cash register to a man at the counter. She said that when she approached Ms. Jenkins to ask her why she was giving money away, she saw that the man receiving the money had a gun. She said that the gun appeared to be long but that she could only see the barrel because the gun was inside a dark-colored duffle bag with some type of clothing lying over the top of it. She said the man pointed the gun at her and motioned for her to return to the drive-through. She said she put up her hands and waited for him to take what he wanted and leave. She said that Ms. Jenkins' mouth was open and she looked "scared to death." She said the man left the counter and walked around the corner. She said she immediately began pushing the alarm buttons in the store.

Ms. Threat testified that she saw the face of the robber during the robbery and that she saw him again about one week later. She said that she saw him walk through the McDonald's restaurant and that she and her manager followed him to a Wendy's restaurant. She said they called the police who arrested him at Wendy's. She said she was certain the man they followed to Wendy's was the same man who had robbed the McDonald's the week before. She identified the defendant in court as the man who robbed the restaurant and acknowledged that she also identified him in general sessions court approximately one year before the trial.

Memphis City Police Officer David Galloway testified that he received a call to go to the library at 3030 Poplar Street on November 24, 2002. He said some officers had discovered a twelve-gauge shotgun, a blue sweater cap, and one pair of blue gym shorts in a blue Wilson gym bag behind

the dumpster in back of the library. He said the shotgun contained one shell. He said he photographed the items and tagged them for storage as evidence in the police property room.

On cross-examination, Officer Galloway testified that he was not called to the robbery scene at the McDonald's restaurant and that he did not know whether the bag and its contents were checked for fingerprint evidence. He said that his job was only to collect the evidence. This concluded the state's proof. The defendant did not present any evidence.

The jury returned a verdict of guilty on counts one and two of the indictment. Count one alleged that the defendant committed the offense of aggravated robbery by violence, and count two alleged that the defendant committed the offense by putting the victim in fear. The trial court merged count two into count one and entered one judgment of conviction for aggravated robbery.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant contends that the evidence is insufficient to support his conviction for aggravated robbery. He argues that the conviction rests solely on the identifications provided by two eyewitnesses. The state contends the evidence is sufficient. We agree with the state.

Our standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). We do not re-weigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions about witness credibility were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

Aggravated robbery is the "intentional or knowing theft of property from the person of another by violence or putting the person in fear" and "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." T.C.A. § 39-13-401, -402. The record reflects that the defendant was positively identified by two eyewitnesses: Ms. Jenkins and Ms. Threat. Ms. Jenkins testified that she also identified the defendant before the trial from photographs and at a previous court session. Ms. Threat testified that she saw the face of the robber during the robbery, that she recognized him when she saw him again in the restaurant, and that she also identified him in general sessions court approximately one year before the trial. Both witnesses also testified that the defendant displayed a "long" gun during his commission of the robbery. Ms. Jenkins testified that she feared the defendant may shoot her, even if she gave him the cash in the register, and pointing a deadly weapon at a victim constitutes "violence" as used in the offense of robbery. See State v. Allen, 69 S.W.3d 181, 186 (Tenn. 2002). We conclude that the evidence was sufficient.

## II. VARIANCE IN THE INDICTMENT

The defendant contends that a fatal variance exists between the indictment and the proof presented at trial because both counts of the indictment incorrectly allege that the property taken belonged to the employee working the cash register, when in fact the property was owned by McDonald's restaurant. The state contends that the indictment meets the requirements set forth in T.C.A. § 40-13-202 and is valid.

In this case, count one alleges that the defendant, Clarence Mabon, on November 23, 2002, in Shelby County, Tennessee, "did unlawfully, knowingly, and violently, by use of a deadly weapon, to wit: a firearm, obtain from the person of AMESHIA JENKINS: a sum of money, proper goods and chattels of AMESHIA JENKINS, in violation of T.C.A. § 39-13-402 . . . ." Count two differs in alleging that the defendant "did unlawfully and knowingly, by use of a deadly weapon, to wit: a firearm, put AMESHIA JENKINS in fear and obtain from the person of AMESHIA JENKINS: a sum of money, proper goods and chattels of AMESHIA JENKINS, in violation of T.C.A. § 39-13-402, against the peace and dignity of the State of Tennessee."

Tennessee Code Annotated section 40-13-202 provides:

> The indictment must state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court, on conviction to pronounce the proper judgment . . . .

The defendant contends that if the ownership allegation in the indictment names one person and the proof at trial shows the stolen property belongs to a different person, the variance in the indictment is fatal, citing Daughtery v. State, 424 S.W.2d 414 (Tenn. 1968); Johnson v. State, 253 S.W. 963 (Tenn. 1923); Bolton v. State, 617 S.W.2d 909 (Tenn. Crim. App. 1981); and Parton v. State, 458 S.W.2d 646 (Tenn. Crim. App. 1970). These cases followed the earlier common law variance rule which stated that "if a person or thing necessary to be mentioned in an indictment is described with greater particularity than is requisite, such person or thing must be proved exactly as described in the indictment." Bolton, 617 S.W.2d at 910 (citations omitted). However, the old common law rule has since been relaxed, "so that substance rather than form is now determinative of such questions." State v. Moss, 662 S.W.2d 590, 592 (Tenn. 1984).

In Moss, the defendant was convicted of petit larceny. The proof showed that the defendant stole a sum of money from the car of a pizza delivery man employed by Matt's Pizza. Both the indictment and the proof stated that the money stolen was owned by Robert Furlotte and Charles Oswalt. The variance was that the indictment stated that Furlotte and Oswalt operated as a partnership, but the proof revealed that the two owners operated their business in corporate form. The supreme court held that to the extent a variance existed between the indictment and the proof

respecting the owner of the money stolen, "it was not a material one and amounts to nothing more than harmless error." Id. The court stated that

> The policy now followed in this and in most other jurisdictions is that before a variance will be held to be fatal it must be deemed to be material and prejudicial. A variance between an indictment and the proof in a criminal case is not material where the allegations and proof substantially correspond, the variance is not of a character which could have misled the defendant at trial and is not such as to deprive the accused of his right to be protected against another prosecution for the same offense. . . .
>
> We approve the principles adopted by the Court in United States v. Schoenhut, 576 F.2d 1010 (3rd Cir.1978), which we paraphrase as follows: Unless substantial rights of the defendant are affected by a variance, he has suffered no harm, and a variance does not prejudice the defendant's substantial rights (1) if the indictment sufficiently informs the defendant of the charges against him so that he may prepare his defense and not be misled or surprised at trial, and (2) if the variance is not such that it will present a danger that the defendant may be prosecuted a second time for the same offense; all other variances must be considered to be harmless error.

Id. (citations omitted).

We conclude that the substantial rights of the defendant in this case were not affected by the variance between the allegations of the indictment and the proof respecting ownership of the stolen money. The indictment sufficiently informed the defendant of the charges against him to allow him to prepare a defense without being misled or surprised at trial, and the variance does not present any danger that the defendant could be prosecuted a second time for the same offense. The discrepancy in the indictment concerning ownership is neither material nor prejudicial to the substantial rights of the defendant and, therefore, is not a fatal variance between the indictment and proof. The indictment states the facts constituting the aggravated robbery offense in ordinary and concise language, such that a person of common understanding could know what was intended and the court could pronounce the proper judgment, as required by T.C.A. § 40-13-202. The defendant is not entitled to relief on this issue.

Based on the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, JUDGE

-5-