IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
September 19, 2017 Session

**STATE OF TENNESSEE v. CHRISTOPHER LEE SMITH**

**Appeal from the Criminal Court for Campbell County**
**No. 16517    Elizabeth C. Asbury, Chancellor**

—————————————————

**No. E2016-01612-CCA-R3-CD**

—————————————————

A Campbell County Criminal Court Jury convicted the Appellant, Christopher Lee Smith, of driving under the influence (DUI), 5th offense; DUI, per se; driving on a revoked license; and violating the financial responsibility law.  The trial court merged the DUI convictions and sentenced the Appellant as a Range II, multiple offender to a total effective sentence of three years, to be suspended after service of 150 days in confinement.  On appeal, the Appellant contends that (1) he should have been tried on the original indictment, not the amended indictment; (2) the trial court should have granted a mistrial after the State informed the jury that the Appellant acted "feloniously," thereby informing the jury that the Appellant had prior DUI convictions; and (3) the proof was insufficient to sustain his DUI convictions, arguing that the State failed to prove that he acted "feloniously" as alleged in the indictment.  Upon review, we note that the judgment of conviction in count one incorrectly reflects that the charged offense was DUI, 3rd offense; accordingly, the case is remanded to the trial court for entry of a corrected judgment reflecting that the charged offense in count one was DUI, 5th offense.  The trial court's judgments are affirmed in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed;**
**Case Remanded**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and TIMOTHY L. EASTER, JJ., joined.

Michael G. Hatmaker, Jacksboro, Tennessee, for the Appellant, Christopher Lee Smith.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; Jared Ralph Effler, District Attorney General; and Courtney H. Stanifer, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

# I.  Procedural History

Following a collision on Lynch Hollow Road in Campbell County on May 8, 2013, the Campbell County Grand Jury returned a multi-count indictment against the Appellant.  Specifically, count one, which charged the Appellant with driving under the influence (DUI), alleged that the Appellant,

> on or about May 8, 2013, . . . did unlawfully and knowingly drive and be in physical control of an automobile on a public road, street, or highway . . . while under the influence of any intoxicant . . . that impaired his ability to safely operate a motor vehicle by depriving him of the clearness of mind and control of himself which he would otherwise possess in violation of Tennessee Code Annotated §55-10-401, all of which is against the peace and dignity of the State of Tennessee.
>
> And the Grand Jurors aforesaid, does further present: That CHRISTOPHER LEE SMITH in the County and State aforesaid, on or about May 8, 2013, had previously been convicted of DUI as follows:
>
> 1.  In the Criminal Court of Campbell County, Tennessee case #12826 on 3-10-2006
> 2.  In the City Court of Jellico, Tennessee case #1015816053 on 3-1-2004
> 3.  In the City Court of Jellico, Tennessee case #1009116031 on 3-1-2004
> 4.  In the Criminal Court of Campbell County, Tennessee case #10929 on 9-5-2001.

Count two alleged that the Appellant "did unlawfully drive . . . upon the public street [or] highway" with a "blood alcohol concentration" of "twenty hundredths (.20%) of one percent or more" in violation of Tennessee Code Annotated section 55-10-406. Count two further alleged that the Appellant had the aforementioned prior DUI convictions.  Count three alleged that the Appellant violated the implied consent law by refusing to submit to a blood test at a time when his driver's license was revoked because of a DUI conviction, count four alleged that the Appellant drove on a revoked license, and count five alleged that the Appellant violated the financial responsibility law by failing to provide evidence he possessed automobile insurance.

On July 28, 2015, the case proceeded to trial.[1]  The appellate record contains a "partial transcript" of that proceeding.  The transcript begins after voir dire and jury selection and follows a bench conference that was not transcribed.  During a discussion regarding whether the indictment for the DUI charges should include the word "feloniously," the State argued that the failure to include the word "feloniously" did not invalidate the indictment or prevent the State from seeking felony convictions on the charges.  Defense counsel responded, "The Court has ruled, and I think the ruling is correct."[2]  The court then opined that "feloniously is an important word" but that "the substance of the charges are well set out in the indictment."  The court then said that it would "change [its] opinion" and allow the State to seek felony convictions despite the State's failure to "officially notice[] that this was a felony."

Following the discussion, the State read the indictment to the jury.  Afterward, the trial court observed that the State had not read the part of the charge that informed the jury the Appellant's driver's license had been revoked because of prior DUI convictions; however, that information had not been redacted from the written copy of the charge included in the "ring binder notebook" given to each member of the jury.  After noting that jeopardy had not attached, the trial court determined that a mistrial should be declared and that a new trial date should be scheduled.  The court also suggested that granting a new trial provided an opportunity to "clean all these indictment issues up . . . ."

On July 30, 2015, the State filed a motion to amend the indictment as follows:

> 1.   In Count 1, removing the language "unlawfully and knowingly" and inserting the language "unlawfully, knowingly, and feloniously."
>
> 2.   In Count 2, removing the language "unlawfully" and inserting the language "unlawfully, knowingly, and feloniously."
>
> 3.  Also in Count 2, removing the language "Tennessee Code Annotated §55-10-406" and inserting the language "Tennessee Code Annotated §55-10-401 and §55-10-402."
>
> 4.  Removing Count 3 in its entirety and moving the count to a separate captioned page to be heard during the bifurcated portion of the trial as "Count 5."

---

[1] Judge E. Shayne Sexton presided over that trial.

[2] The trial court's ruling on the issue was not transcribed.

5.  Renaming Count 4 as "Count 3."

6.  Renaming Count 5 as "Count 4."

On August 17, 2015, the trial court granted the motion, and the case proceeded to trial.[3]

## II.  Trial

At trial, Newton Bartel testified that on May 8, 2013, he was driving a truck pulling a tandem axle trailer on Lynch Hollow Road when he encountered a dark green or black Saturn traveling toward him in the other lane near "an S turn."  The Saturn was traveling at a "fast" speed.  The Saturn passed Bartel's truck but hit his trailer.  After the collision, Bartel immediately pulled off on the right side of the road and parked, and the Saturn stopped in the middle of the road.  Bartel got out of his vehicle and noticed that one of the trailer's wheels was gone.

Bartel approached the Saturn and saw the Appellant sitting in the driver's seat, holding the steering wheel.  Bartel asked if the Appellant was okay.  The Appellant got out of the car, and he and Bartel walked to the passenger side of the car to check on Tim Black, who was sitting in the front passenger seat.  Black was "slurring words" and appeared "pretty incapacitated," and Bartel and the Appellant told Black to stay where he was.  Bartel and the Appellant then inspected the Saturn and saw a "ton" of damage to the front of the car on the driver's side.

Bartel and the Appellant discussed the collision, and the Appellant said, "I'm not sure whose fault it is.  I think you may have been a little left of center but it doesn't matter because I'm drunk and going to jail anyway."  As they talked, Bartel noticed that the Appellant's eyes were red.  The Appellant asked, "[D]o we have to call the police, my license is under suspension."  Bartel insisted that the police be called in order to report the collision and to get medical attention for Black, who was bleeding from a hole in his forehead caused by his head hitting the dashboard.

Bartel recalled that before the police arrived, the Appellant attempted to start the Saturn in order to drive it to his house.  Concerned the Appellant might leave, Bartel took a photograph of the car's license plate; however, the Appellant could not start the car.  Thereafter, the police and emergency medical services (EMS) arrived at the scene.

On cross-examination, Bartel said that the collision occurred around 2:00 or 3:00 p.m.  In response to questioning, he stated that the Appellant did not appear to be "pretty

---

[3] During that trial, Chancellor Asbury sat as judge by interchange.

well under the influence," noting that the Appellant had red eyes but that he "walked fine."

Campbell County Sheriff's Deputy Ty Daugherty testified that on May 8, 2013, he was dispatched to the scene of the accident. When he arrived at 4:05 p.m., two other deputies were present. Deputy Daugherty said Lynch Hollow Road was "very curvy" and steep where the collision occurred.

Deputy Daugherty noticed that the black vehicle involved in the accident was in the middle of the road, blocking the roadway. The Appellant was standing beside the black vehicle, and Black was sitting in the front passenger seat. Black had a large, bleeding cut on his head, he was unconscious, and his seatbelt was holding him upright.

Deputy Daugherty first spoke with the Appellant, who acknowledged "that he was driving the vehicle and that he had wrecked and hit Mr. Bartel." Deputy Daugherty next spoke with Bartel, who said he was driving down Lynch Hollow Road when the Appellant's vehicle struck his trailer. Bartel said the Appellant had admitted that he was intoxicated and that he did not have a driver's license. After speaking with Bartel, Deputy Daugherty again spoke with the Appellant, who said that he had consumed approximately ten beers that day. The Appellant did not specify the exact time that he drank the beers.

Deputy Daugherty recalled that the Appellant's speech was "somewhat slurred," his eyes were red, and he had to lean against his vehicle to keep from swaying. While they spoke, they stood "[p]retty close," and Deputy Daugherty could smell alcohol on the Appellant. The Appellant provided proof of his vehicle's registration but could not provide proof of insurance. Deputy Daugherty learned from the Tennessee Department of Safety and Homeland Security that the Appellant's driver's license had been revoked. Deputy Daugherty asked the Appellant to perform field sobriety tests, but the Appellant refused. At that time, Deputy Daugherty placed the Appellant under arrest.

Deputy Daugherty read the Appellant the implied consent form, but the Appellant refused to give blood voluntarily. Nevertheless, after the Appellant was taken to jail, a Campbell County EMS employee took a sample of the Appellant's blood. The sample was then sent to the Tennessee Bureau of Investigation's (TBI) crime laboratory for testing.

On cross-examination, Deputy Daugherty acknowledged that the Appellant's vehicle had "heavy damage" to the "driver's side front end." Black was sitting in the front passenger's seat, strapped into the seat by a seatbelt with "[h]is head . . . slumped down." Deputy Daugherty saw the Appellant eleven minutes after he was dispatched to the scene and thought the Appellant was "obviously drunk," noting he had bloodshot

eyes, slurred speech, and unsteady feet. Deputy Daugherty asserted that he had been trained to notice signs of intoxication but that Bartel had received no such training, which explained why Bartel did not notice the Appellant's intoxication.

TBI Special Agent forensic scientist Melanie Carlisle testified that she tested the sample of the Appellant's blood. His blood alcohol content was .22, which was almost three times the legal limit.

Before instructing the jury, the trial court dismissed the charge of violating the implied consent law. The jury found the Appellant guilty of DUI; DUI, per se; driving on a revoked license; and violating the financial responsibility law. The trial court then held the second part of the bifurcated proceeding for the jury to determine whether the Appellant had the requisite prior convictions to establish a conviction of DUI, 5th offense. At the beginning of the proceeding, the State submitted certified copies of judgments showing that the Appellant had four prior convictions of DUI: one in 2001, two in 2004, and one in 2006.

Upon considering the evidence, the jury found the Appellant guilty of DUI, 5th offense, a Class E felony, on the DUI charge. The trial court merged the DUI convictions and sentenced the Appellant as a Range II, multiple offender to three years for the DUI conviction and required the Appellant to serve 150 days in confinement and the balance on probation. The court sentenced the Appellant to a concurrent sentence of six months for the driving on a revoked license conviction and imposed a $100 fine for the conviction of violating the financial responsibility law.

### III. Analysis

#### A. Indictment

On appeal, the Appellant contends that he should have been tried on the original indictment. However, we note that the Appellant did not object to the amendment to the indictment; in fact, he agreed with the trial court's initial statement that the State should have included the word "feloniously" in the DUI charges. Accordingly, this issue is waived. State v. Lopez, 440 S.W.3d 601, 610 (Tenn. Crim. App. 2014) (citing Tenn. R. Crim. P. 12(b)(2)(B) and State v. Nixon, 977 S.W.2d 119, 120-21 (Tenn. Crim. App. 1997)).

#### B. Mistrial

Next, the Appellant contends that the trial court erred by not granting a mistrial when the State read the indictment on counts one and two to the jury without redacting language that the Appellant committed the DUI offenses "feloniously." The Appellant

argues that as a result, the jury was informed that the Appellant had prior DUI convictions.  However, the Appellant failed to request a mistrial.  This court has stated that the "[f]ailure to request a mistrial waives any further action by the trial court."  State v. Stanhope, 476 S.W.3d 382, 397-98 (Tenn. Crim. App. 2013).  Moreover, the Appellant did not include this issue in his motion for new trial.  Tenn. R. App. P. 3(e); State v. Hatcher, 310 S.W.3d 788, 808 (Tenn. 2010).  Therefore, this issue is waived.

## C.  Sufficiency of the Evidence

As the next issue, the Appellant contends that the State failed to prove during the first phase of the trial that the Appellant committed the DUI offenses "feloniously" as alleged in the amended indictment; therefore, the trial court erred by denying his motion for a judgment of acquittal.  This court has noted that "[t]he standard by which the trial court determines a motion for judgment of acquittal at the end of all the proof is, in essence, the same standard which applies on appeal in determining the sufficiency of the evidence after a conviction . . . ."  State v. Thompson, 88 S.W.3d 611, 614-15 (Tenn. Crim. App. 2000).  Therefore, we will address the Appellant's complaint as a challenge to the sufficiency of the evidence.

On appeal, a jury conviction removes the presumption of the appellant's innocence and replaces it with one of guilt, so that the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings.  See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).  The appellant must establish that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e).

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom.  See State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983).  In other words, questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts.  See State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

The guilt of a defendant, including any fact required to be proven, may be predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence.  See State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).  Even though convictions may be established by different forms of evidence, the standard of review for the sufficiency of that evidence is the same whether the conviction is based upon direct or circumstantial evidence.  See State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011).

The Appellant's argument regarding sufficiency is perplexing. The Appellant acknowledges that "a bifurcated trial is to occur when a defendant is accused of multiple offense driving under the influence" and that a bifurcated trial was held in the instant case. He complains, however, that because the State amended the indictment to allege that the Appellant committed the DUI offenses "feloniously," the State was required to prove during the first phase of the proceeding that the DUI offenses were felonies. In other words, the Appellant appears to argue that the State has failed to prove the elements of the offenses.

Tennessee Code Annotated section 55-10-401 defines DUI as follows:

> It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park, or apartment house complex, or any other premises that is generally frequented by the public at large, while:
>
> (1) Under the influence of any intoxicant, marijuana, controlled substance, controlled substance analogue, drug, substance affecting the central nervous system, or combination thereof that impairs the driver's ability to safely operate a motor vehicle by depriving the driver of the clearness of mind and control of oneself that the driver would otherwise possess; [or]
>
> (2) The alcohol concentration in the person's blood or breath is eight-hundredths of one percent (0.08%) or more . . . .

Clearly, the evidence adduced at trial supports the Appellant's convictions of DUI and DUI, per se. Notably, the Appellant does not contend that the State failed to establish the elements of DUI or DUI, per se as set forth in the statute. Instead, as the State notes, the Appellant's claim is that of a variance, which generally "results when the evidence at trial does not correspond to the elements of the offense alleged in the charging instrument." State v. March, 293 S.W.3d 576, 588 (Tenn. Crim. App. 2008) (citing State v. Keel, 882 S.W.2d 410, 416 (Tenn. Crim. App. 1994)). This court has provided the following explanation:

> In the past, Tennessee has followed "a rather stringent variance rule, and if a person or thing necessary to be

mentioned in an indictment [was] described with greater particularity than [was] requisite, such person or thing [had to] be proved exactly as described in the indictment." Bolton v. State, 617 S.W.2d 909, 910 (Tenn. Crim. App. 1981). "The policy now followed in this and in most other jurisdictions," however, "is that before a variance will be held to be fatal it must be deemed to be material and prejudicial." State v. Moss, 662 S.W.2d 590, 592 (Tenn. 1984).

Id.

The "surplusage rule," which is related to the variance rule, concerns surplus language in the indictment. Id. The surplusage "may implicate insufficiency of the charging instrument as opposed to insufficiency of the convicting evidence" but does not render an indictment defective "if, after eliminating the surplusage, the offense is still sufficiently charged." Id. (citing State v. Culp, 891 S.W.2d 232, 236 (Tenn. Crim. App. 1994)). "[A] surplusage issue is one of variance when the State fails to prove the existence of a fact that was alleged, albeit gratuitously, in the charging instrument. In this context, 'surplusage' implicates an evidence-sufficiency issue." Id. at 588-89. Regardless, "the use of the surplus term 'cannot enlarge the essential elements of the offense.'" Id. at 589 (quoting State v. Witherspoon, 769 S.W.2d 880, 884 (Tenn. Crim. App. 1988)). If the surplus term "is not essential, then it need not be proven at all." Culp, 891 S.W.2d at 236 (citing Ray v. State, 577 S.W.2d 681, 683 (Tenn. Crim. App. 1978)).

After examining the DUI statute, we note that neither the term "felonious" nor "feloniously" is included in Tennessee Code Annotated section 55-10-401; accordingly, those terms are not elements of the offense but are mere surplus language. The State was not required to prove during the first phase of the bifurcated proceeding that the Appellant acted "feloniously." Therefore, no variance exists between the indictment and the proof that warrants granting the Appellant relief.

We note, however, that the judgment of conviction for count one incorrectly reflects the charged offense was DUI, 3rd offense. Therefore, the case must be remanded to the trial court for entry of a corrected judgment reflecting that the charged offense on count one was DUI, 5th offense.

## IV.  Conclusion

Based upon the foregoing, we affirm the judgments of the trial court but remand for correction of the judgment of conviction in count one.


_____
NORMA MCGEE OGLE, JUDGE