**STATE of Tennessee, Appellee,**

v.

**Curley Lee HOWSE, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

March 5, 1982.

Permission to Appeal Denied by Supreme Court June 1, 1982.

Walter C. Kurtz, Nashville, for appellant.

William M. Leech, Jr., Atty. Gen. of Tenn., David M. Himmelreich, Asst. Atty. Gen., Thomas H. Shriver, Dist. Atty. Gen., Weakley E. Barnard, Jack Seaman, Asst. Dist. Attys. Gen., Nashville, for appellee.

## OPINION

BYERS, Judge.

The defendant was convicted of aggravated rape and sentenced to life imprisonment, and he was convicted on two counts of aggravated sexual battery and sentenced to serve 35 years for each count. Each of the sentences were ordered to be served consecutively.

The defendant says the trial court should have suppressed statements made by him to the police, says he should have had a bifurcated hearing on the issue of punishment,

says the court's instruction on expert testimony was a comment on the evidence and should have been replaced by an instruction on expert testimony which he submitted to the court, says the evidence does not support the verdict, says the sentences should not have been run consecutively, and says the court should have instructed the jury as to the time of the commission of the crime as set out in the indictment.

The state's evidence on the issue of guilt consists of the testimony of three children, one male and two female, who were all under the age of 13 at the time of the offense. This evidence shows the defendant inserted his penis in the rectum of two of the children, and one child testified the defendant put his private parts against her private parts. A confession of the defendant was introduced in which he admitted his guilt.

There was considerable evidence introduced by the defendant through physicians to show the three children had gonorrhea but the defendant did not. There was also medical evidence concerning how gonorrhea could be transmitted. The defendant, testifying in his own behalf, denied committing the sexual acts and claimed the statement introduced did not represent what he had said.

The defendant contends a remark made by him to police officers about curing gonorrhea and a subsequent statement of guilt were improperly allowed because there was no showing his right not to make statements against interests was preserved.

The defendant was arrested on February 27, 1980, and taken to a police facility. At this time the defendant was advised of his rights and signed a waiver thereof. He then told the officers he did not wish to talk to them concerning this matter until he spoke to Reverend Mitchell, "his spiritual adviser."[1] The officers, through previous investigations, knew the children had gonorrhea. One of the officers told the defendant he should obtain medical help if he had gonorrhea. The defendant replied he had gonorrhea previously and knew how to cure the disease. The officer did not attempt to question the defendant at this time.

On February 29, 1980, the defendant agreed to talk to the officers provided Reverend Mitchell would be present at the interview. Mitchell was present at the interview, during which the defendant admitted committing the acts for which he was indicted.

Prior to the questioning of the defendant on this occasion, he was again advised of his rights, and he again signed a waiver thereof. The defendant claims he was unable to understand his rights because of mental retardation, and he also claims he asked for an attorney.

■ The evidence presented at the suppression hearing does not support his claim. The defendant's first statement regarding the gonorrhea was not as a result of police interrogation. An officer merely advised him about the need for medical attention if he had gonorrhea, and the defendant voluntarily responded to this. This did not constitute a violation of the defendant's rights.

■ The medical evidence shows the defendant suffered from schizophrenia and was borderline mentally retarded. However, the medical evidence does not show the defendant was incapable of understanding his rights. Further, the defendant was sufficiently aware of his rights to insist on the presence of Reverend Mitchell before talking to the police. The officer testified the defendant did not ask for an attorney. Reverend Mitchell testified he did not hear the defendant ask for an attorney, but heard him say he didn't trust attorneys and had fired one. Arrayed against this evidence was the defendant's claim to the contrary.

The trial judge weighed the evidence on the issues regarding the admissibility of the defendant's statements and found in favor of the state. The evidence supports the

---

1. The defendant was known as an itinerant or street preacher, who preached in the federal housing project where the contact with the children occurred.

finding of the trial judge and meets the test of admissibility as stated by the Tennessee Supreme Court in *State v. Kelly*, 603 S.W.2d 726 (Tenn.1980). Beyond this, an independent assessment of the evidence satisfies us the defendant was not denied his rights under the Fifth or Sixth Amendments to the United States Constitution. *See Davis v. North Carolina*, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966) and *Beckwith v. United States*, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976).

We do not find the defendant has a state or federal constitutional right to a bifurcated hearing on punishment.

■ The defendant claims he was denied equal protection of the law and bases this claim upon the Tennessee Supreme Court decision in *State v. Mackey*, 553 S.W.2d 337 (Tenn.1977). The Court in *Mackey* held in determining sentencing after a plea of guilty, evidence which is relevant to the issue of sentencing must be considered. Since a defendant who pleads not guilty does not get the type of sentencing hearing as one who pleads guilty, the defendant argues this difference places one who pleads not guilty at a disadvantage. The defendant argues this is a burden on the constitutional right not to plead guilty and, thus, is a violation of the equal protection clause.

The defendant says the United States Supreme Court decision in *United States v. Jackson*, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968) supports his claim of denial of equal protection. In *Jackson*, a procedure, by which a defendant could be sentenced to death if he was found guilty in a jury trial, but could at most be sentenced to life if he pled guilty or if he pled not guilty and waived a jury trial, was held to be unconstitutional because it placed an impermissible burden on the right to plead not guilty.

We do not find the defendant in this case was denied equal protection. The procedure in *Mackey*, unlike the one in *Jackson*, does not create an impermissible burden on a defendant's right to plead not guilty. Under *Mackey* the one who is to fix punishment, jury or judge, is not prohibited from sentencing a defendant who pleads guilty to the maximum punishment. Thus, a defendant who pleads guilty and is sentenced under the *Mackey* guidelines may well receive a greater sentence than a defendant who pleads not guilty and has the sentence fixed in a unitary trial by a jury.

■ There is not merit to the defendant's argument Tennessee's method of jury sentencing without additional background information violates the principle due process of law.

The *Mackey* decision is a policy decision of the Tennessee Supreme Court, not a constitutional decision. *Mackey* does not hold defendants who plead guilty have a constitutional right to have the jury or judge hear additional background information regarding sentencing.

We have examined the cases of *Roberts v. United States*, 445 U.S. 552, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980), *United States v. Grayson*, 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978), *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), and *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), which are cited by the defendant. These are cases in which the defendants attacked statutorily imposed bifurcated punishment hearings by claiming it was a violation of due process for the judge or jury responsible for sentencing to hear information about the defendant other than information brought out in open court on the issue of guilt. Although the bifurcated sentencing procedures in these cases were held not to violate due process, we have found no cases which require a bifurcated sentencing procedure as a constitutional right of a convicted person. In *Chaffin v. Stynchombe*, 412 U.S. 17, 22, 93 S.Ct. 1977, 1980, 36 L.Ed.2d 714 (1973), the United States Supreme Court, in dicta, stated, "this Court has never expressed doubt about the constitutionality of that practice [jury sentencing in a unitary proceeding]."

Bifurcated sentencing hearings are used in death penalty cases to avoid the problem

addressed in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). *Furman* invalidated the imposition of the death penalty because the Court found the death sentence was being disproportionately inflicted upon the poor, the uneducated, and members of identifiable minority groups. This reasoning does not compel, as a constitutional right, a bifurcated hearing in all criminal prosecutions.

The bifurcated sentencing procedure, which the defendant advocates, has birth in a philosophical theory, which promotes sentencing for the purpose of rehabilitation, rather than for purposes of retribution and deterrence. *Grayson, supra.*[2]

■ The Legislature determines the purposes of sentencing and the particular penalty for an offense, and the courts may not interfere except in those instances where the sentence imposed violates the Eighth Amendment prohibition against cruel and unusual punishment, *Gregg, supra.* The method to be used by the judge or jury in reaching the sentence is also within the legislative domain, and absent a clear infringement of a constitutional right of the defendant, the courts may not interfere with the methods chosen by the Legislature.

■ The defendant insists the instruction given on expert testimony is a comment on the evidence in violation of Article VI, Section 9 of the Tennessee Constitution. The portion of the charge complained of is as follows:

This expert testimony should be received by you with caution. It is largely a field of speculation and requires careful and intelligent evaluation on your part if it is to be valid means of reaching the truth.

In *Hirshfeld v. Dana*, 193 Cal. 142, 223 P. 451 (1924), the California Supreme Court held a charge with similar words was in contravention of a provision of the California Constitution prohibiting a trial judge from commenting on the evidence. In *Wilcox v. State*, 94 Tenn. 106, 28 S.W. 312 (1894), our Supreme Court approved a similar charge. It is not clear from the *Wilcox* case whether this was decided on a constitutional issue.

The defendant relies primarily upon *Christian v. State*, 555 S.W.2d 863 (Tenn. 1977), in support of his argument on this issue. In *Christian* our Supreme Court held a jury instruction which disparaged alibi evidence was a comment upon the evidence and, thus, in violation of Article VI, Section 9 of the Tennessee Constitution. In our view there is a significant distinction between alibi evidence and expert testimony.

When an alibi witness testifies he was with an accused at a time and place other than the time and place of the commission of the crime, such witness is giving testimony about a fact which, if true, is an observable fact all the world could see if they were there to see. Such fact does not require specialized training in order for one to see or to report.

On the other hand, witnesses who give expert testimony are allowed to do so because the matter about which they testify is of such a nature only those skilled or trained will have knowledge regarding the matter. In other words, expert witnesses do not give testimony about a fact which is available for all the world to see and report. Indeed, expert witnesses in most instances do not testify as to a fact on the ultimate issue, but give an opinion based upon the conclusions which they draw from the facts they are able to see or demonstrate. Thus, expert witnesses, for the most part, do not testify to "facts" but rather give an opinion based on facts, which facts are quite often obscured from the view of a person not specially trained in the field.

**2.** Footnote 6 in *Grayson*, 98 S.Ct. 2614, states:
The evolutionary development of sentencing and incarceration practices continues to engage attention. See S. 1437, 95th Cong., 1st Sess., Part III (1977); Task Force Report. Increasingly there are doubts concerning the validity of earlier, uncritical acceptance of the rehabilitation model. So experienced a penologist as the late Torsten Eriksson, long Director of Prisons in Sweden and later United Nations Interregional Advisor on Crime Prevention and Criminal Justice, dedicated his 1976 book, The Reformers: An Historical Survey of Pioneer Experiments in the Treatment of Criminals (Djurklou transl.), "[t]o those who tried, even if they failed."

■ This State has long recognized the finder of fact should receive expert opinion with caution. *Edwards v. State*, 540 S.W.2d 641 (Tenn.1976), *Mullendore v. State*, 183 Tenn. 53, 191 S.W.2d 149 (1945), and this State has also recognized such testimony as speculative, *Sparkman v. State*, 469 S.W.2d 692 (Tenn.Cr.App.1970).

Expert testimony is unique because experts are allowed to give an opinion in a particular situation whereas other witnesses are prohibited from giving opinion testimony in areas where expertise is not required. The courts have recognized the need for expert opinion testimony, but have recognized such opinion as just that. The law recognizes this testimony is speculative and should be received with caution. The trial judge in this case was correct in instructing the jury how to receive and weigh expert testimony. We conclude, therefore, the instruction given on expert testimony by the trial judge was not a comment on the evidence.

■ We are of the opinion the trial judge did not abuse his discretion in running the sentences in this case consecutively. The trial judge found the defendant to be a multiple and dangerous offender. Although the defendant does not clearly meet the multiple offender description in *Gray*, from the circumstances of this case, he can be said to meet the dangerous offender description. Further, we think the evidence brings the defendant within the rule of *Bethany v. State*, 565 S.W.2d 900 (Tenn.Cr. App.1978). One of the children testified the defendant held a knife to her throat as he committed the sexual act upon her. All the children testified the defendant threatened to kill their mother if they told her what he had done. This conduct is indicative of a dangerous offender.

The evidence in this case shows the defendant had taken up preaching in an area of public housing and was centering his preaching upon young children. From his testimony it appears he is of the opinion that part of his ministry compels the teaching of "sexuality" from a spiritual stand-point. However, the facts show he departed from the spiritual and practiced actual sexuality. In *Bethany*, the trial judge was justified in ordering consecutive sentences where a scout master was involved in sexual acts with members of his troop and where the record indicated the scout master became involved in scouting activities to give him access to young boys. We are of the view the activities of the defendant in this case are sufficiently close to those in *Bethany* to justify the consecutive sentences.

■ The state was not required to strictly show these offenses occurred during the dates alleged in the indictment, as claimed by the defendant, because there is no showing the dates alleged were essential to proving the offense or to the imposition of a defense. *Prince v. State*, 529 S.W.2d 729 (Tenn.Cr.App.1975).

The record shows the dates alleged were prior to the date the indictments were returned in this case, which is all the law requires. The indictment is sufficient in its allegations to protect the defendant from further prosecution on these charges. *Bolton v. State*, 617 S.W.2d 909 (Tenn.Cr.App. 1981).

■ The evidence in this case supports the verdict of the jury. Each of the victims were under the age of 13 years. The male child testified the defendant inserted his penis into the child's rectum. One of the female children testified the defendant placed his penis against her vagina. The other female child testified the defendant inserted his penis into her rectum and mouth.[3] In the statement the defendant made to the police, he confessed his guilt. The young children were sometimes inconsistent in their testimony, as the defendant said. There was also some evidence presented by the defendant which contradicted the testimony of these children. However, this was a factual dispute for the jury to settle. They have done so and have resolved the conflicts in the testimony in

3. We have paraphrased the vernacular expressions used by the children in their testimony.

658

favor of the state. *State v. Hatchett*, 560 S.W.2d 627 (Tenn.1978).

The jury found the defendant guilty of aggravated rape in the case of the male child, whose testimony of penetration has been set out above. The two convictions of aggravated sexual battery arose from the activity involving the two female children. We find a rational trier of fact could find the defendant guilty beyond a reasonable doubt. Rule 13(e) *T.R.A.P.*

The judgment is affirmed.

WALKER, P. J., and CORNELIUS, J., concur.