# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### April 26, 2011 Session

## STATE OF TENNESSEE v. PAUL M. STACKHOUSE

**Direct Appeal from the Criminal Court for Hamblen County**
**No. 07-CR844      John F. Dugger, Jr., Judge**

---

**No. E2010-01972-CCA-R3-CD - Filed November 18, 2011**

---

The defendant, Paul M. Stackhouse, was convicted of one count of aggravated sexual battery, a Class B felony, and sentenced to nine years in the Department of Correction. The defendant appeals his conviction, claiming that: (1) the evidence is insufficient to support his conviction; (2) the trial court abused its discretion by admitting certain expert testimony and by failing to provide a requested special jury instruction regarding same; (3) the trial court abused its discretion by allowing a witness to testify regarding a prior inconsistent statement made by one of the State's witnesses during the State's case-in-chief and by refusing to provide a limiting jury instruction regarding same; and (4) the trial court erred by failing to grant a judgment of acquittal. After carefully reviewing the record and the arguments of the parties, we affirm the judgment of the court below.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which THOMAS T. WOODALL, J., joined. DAVID H. WELLES, SP. J., not participating.

Douglas R. Beier, Morristown, Tennessee, for the appellant, Paul M. Stackhouse.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; Greg W. Eichelman, District Public Defender; and Kimberly Morrison, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant was indicted January 28, 2008, by a Hamblen County grand jury on one count of aggravated sexual battery, a Class B felony, in violation of Tennessee Code Annotated section 39-13-504(a)(4). The charge stemmed from an allegation that unlawful sexual contact had occurred between the defendant and his granddaughter on an unspecified

date in June of 2006, when the victim was less than thirteen years of age. According to the Bill of Particulars, the charge concerned an incident in which the victim's grandmother entered the defendant's bedroom and discovered the defendant performing oral sex on the eleven-year-old victim during one of the victim's stays at her grandparents' house. The specific date of the offense was described as "the only day in June, 2006, that the defendant was caught by his wife in the act of performing oral sex on his granddaughter."

On July 28, 2010, the defendant was tried before a jury in the Criminal Count for Hamblen County. At his trial, the following evidence was presented.

The State called the victim – one of the defendant's granddaughters – as its first witness. The victim testified that in 2006, her parents had been divorced for about two years. The victim testified that although she lived with her mother, she still had visitation with her father, and that her father lived with his parents, the defendant and his wife. The victim testified that her visitation period included the entire summer, during which time she was living in her own room in the defendant's house in Hamblen County.

During this summer visitation period, the victim testified that sometime during June of 2006, she had just finished taking a shower in the bathroom connected to the defendant's bedroom when the defendant entered the bathroom and started touching her breasts. She further testified that he carried her into his bedroom, laid her down on the bed, and performed oral sex on her. The victim specified that the oral sex included the defendant placing his mouth on her vagina and licking her. The victim testified that on this occasion, while the oral sex was occurring, the defendant's wife, Doris Stackhouse, entered the room and saw them on the bed. According to the victim, Doris Stackhouse was speechless, but a surprised expression washed over her face before she ran out of the room. The victim testified that after this interruption, the defendant stopped what he was doing and chased after his wife. The victim testified that after the defendant left, she dressed herself and ran down the hall to her own bedroom.

On cross-examination, the defendant's counsel asserted that the victim's father remarried in January 2006 and that he moved out of his parents' house following his remarriage. Defense counsel asked the victim whether the sexual contact she had just described had occurred before her father had moved out of the home. The victim stated that she believed it had but that, regardless of whether or not her father was still living there, she spent considerable time staying at her grandparents' house during June of 2006. The defendant's counsel brought to the victim's attention earlier statements made to investigators and on the stand to the effect that the act of cunnilingus at issue had occurred while her father was still living in his parents' home. The victim then testified that if the sex act had not happened in June of 2006, it must have happened in 2005. The defendant's trial counsel

proceeded to impeach the victim with statements made to investigators in 2008 to the effect that nothing had happened between her and the defendant. Finally, defense counsel raised the issue of a letter written by the defendant in 2008 that seemed to indicate that the sex act at issue had occurred three years earlier. The witness agreed that if she made that statement in 2008, then it sounded correct to her that the sex act would have occurred in 2005. Ultimately, the victim answered yes to a statement made by the defendant's counsel that the sex act at issue did not occur in June of 2006.

On re-direct examination, the victim testified that she was under the age of thirteen when the sexual contact that was witnessed by the grandmother occurred. The victim further testified that when investigators initially questioned her regarding the incident she denied it on several occasions because she was afraid of what might happen to her and to her grandfather.

The State next called the defendant's wife, Ms. Doris Stackhouse. Ms. Stackhouse testified that she had been married to the defendant for forty-seven years and was married to him in June of 2006. She further testified that only herself and her husband were living in their home in June of 2006, and that none of their grandchildren ever stayed with them, even intermittently, during that time. The witness specifically testified that the victim would never have stayed with them at any point during June of 2006. Following this testimony, the prosecution requested and received permission to treat Ms. Stackhouse as a hostile witness. During the ensuing cross-examination, Ms. Stackhouse denied that the victim ever visited the residence during June of 2006, denied ever seeing her husband with the victim in their bedroom, and denied ever seeing them together on a bed while the victim was nude. Concerning whether she had ever walked in and seen the victim naked on their bed, she stated that "there is a possibility that that may have happened, but it's not in my memory bank."

The State then questioned Ms. Doris Stackhouse as to whether she could recall going to visit Dr. Kim Keinath (her therapist) on September 15, 2006. Ms. Stackhouse replied that she had been a patient of Dr. Keinath "on and off" for some time but could not recall the specific dates of her appointments. The State asked Ms. Stackhouse if she could recall ever telling Dr. Keinath that she thought her husband was abusing the victim. Ms. Stackhouse stated that she never made any such statement and specifically denied telling Dr. Keinath that she had walked into the bedroom and seen her granddaughter naked on the bed being fondled by her husband.

The State then called Dr. Kim Keinath as a rebuttal witness. The defense objected on grounds that this impeachment testimony was not permissible during the State's case-in-chief and also objected on the grounds that the witness's testimony would include allegations of

crimes that were outside of the one alleged in the Bill of Particulars. Following a jury-out hearing, the trial court decided to allow the testimony.

Dr. Keinath took the stand and testified that she had a Ph.D. in clinical psychology and had been treating Ms. Doris Stackhouse as a patient since approximately 1993. The witness testified that on September 15, 2006, Ms. Stackhouse came in to a session with her and said, "my life has changed dramatically." Ms. Stackhouse proceeded to tell her that she had walked into her bedroom and seen her granddaughter lying on the bed, partially unclothed, and that her husband was down between her granddaughter's legs. Dr. Keinath further testified that Ms. Doris Stackhouse stated: "I think my husband has been sexually abusing my granddaughter and I think this has been going on for a very long time." Following this statement, the trial court instructed the jury that with regard to the witness' testimony concerning "something" going on "for a very long time," they were not to consider anything concerning any other incidents but were only to consider the particular incident that was alleged and charged in the indictment.

Dr. Keinath stated that she advised Ms. Stackhouse to report this incident to the Department of Children's Services (D.C.S.) and explained that if she would not do so, then the doctor would report it herself. Dr. Keinath testified that the rest of the session was spent discussing the possibility of making a report to D.C.S. Dr. Keinath testified that Ms. Stackhouse stated that while she was very angry with her husband and would ensure that he was never around any of the children, she thought that the defendant's behavior might be secondary to his dementia. At some point after this session, when she concluded that Ms. Stackhouse was not going to report the incident to D.C.S., Dr. Keinath stated that she called and reported the incident herself.

On cross-examination, Dr. Keinath stated that nothing in her records spoke to whether or not this sexual contact occurred in June of 2006. Moreover, nothing in her records identified the victim as being the particular granddaughter who was abused by the defendant during the incident referenced by Ms. Stackhouse during her therapy session.

Following this testimony, the State presented the testimony of Dr. Peter Reardon, an expert in pediatric gynecology. During a jury out hearing, the defense objected to his testimony and report on the ground that it was "fraught with indications of other crimes." Specifically, the defendant complained that the doctor's report, which indicated that the victim's hymen had been torn, indicated that this tearing could have been the result of penetration by either a tongue or a digit. The trial court agreed that Dr. Riordan could not opine regarding whether or not any digital penetration of the victim's vagina had occurred, because this proof would go beyond the crime specified in the Bill of Particulars.

When the jury returned, Dr. Riordan testified that he had performed an examination of the victim in November of 2006, and that his examination revealed that the victim's hymen had been torn at some earlier point in time. Dr. Riordan further testified that the tearing of the victim's hymen had healed. Over the defendant's objection, Dr. Riordan testified that this tearing could possibly have been the result of oral sex or oral penetration.

On cross-examination, Dr. Riordan testified that it was not possible to determine the exact time when the victim's hymen had been torn. He testified that based on the hymen's healing process, he would assume that the injury occurred more than two months prior to his examination, and possibly three months. Dr. Riordan also testified that a number of different things can break a hymen, including a fall, and that it was possible for a hymen to be torn without any vaginal penetration. Following the doctor's testimony, the State rested.

The defendant moved to have Dr. Riordan's testimony struck as speculative. This motion was denied. The defendant also moved for a judgment of acquittal on the basis that the State had failed to prove the date of the crime as specified in the Bill of Particulars. The trial court ruled that any discrepancy between the victim's testimony on direct examination that the event happened in 2006 and her testimony on cross-examination that the event happened in 2005 went to her credibility as a witness and was an issue for the jury to decide. After denying the defendant's motion for a judgment of acquittal, the trial court held a jury out hearing during which the defendant was advised of and waived his right to testify in his own defense pursuant to the procedures described in *Momon v. State*, 18 S.W.3d 152, 162-64 (Tenn. 1999).

The defense called Ms. Sheila Barnett, a child protective services worker for the Department of Children's Services, as its first witness. Ms. Barnett testified that she interviewed the victim alone at her school in Cocke County on November 3, 2006. At this initial interview, the victim denied being touched inappropriately by anyone. Ms. Barnett testified that, during this interview, she told the victim that if she remembered anything later or if she was afraid to talk about anything during the interview, the victim should write her a letter. Ms. Barnett stated that at some point following this interview, she was made aware that the victim had written a letter that she wanted Ms. Barnett to read. That letter, dated December 1, 2006, stated that one day the defendant had licked her "down there" and that her grandma had come in and seen it. The letter indicated that this event had happened three years earlier. The witness testified that, during a subsequent interview concerning this letter, the victim confirmed to her that the sexual contact described in the letter had occurred and claimed that it happened about three years earlier (which would have placed it sometime during December of 2003).

The second witness for the defense was the lead investigator of the case, Detective

Pam Taylor of the Hamblen County Sheriff's Department. Upon being shown some notes she took during her investigation, she identified a place on those notes that reflected that the particular sexual act between the grandfather and the victim that was witnessed by the grandmother occurred during the summer of 2005.

On cross-examination, Detective Taylor identified two additional places in her notes in which the sexual contact that was witnessed by the grandmother was labeled as having occurred during the "summer of 2005/2006." The detective further admitted that it was possible that the sexual contact could have occurred in the summer of 2006. On redirect, Detective Taylor re-read a portion of her notes, which stated that several people were "in the house when grandma caught grandpa performing oral sex. [A male] was cooking, summer 2005."

The defense next called Ms. Doris Stackhouse as a witness. Ms. Stackhouse testified that during most of June of 2006, she and her husband were in Maryland and that at one point the defendant was hospitalized there. Ms. Stackhouse testified that she had kept certain travel receipts for tax purposes so that she could deduct the couple's trip to Maryland as a business expense. Ms. Stackhouse testified that the victim was never in her home in June of 2006, and that she had receipts dated June 2, 2006, through at least June 14, 2006, reflecting that the couple was traveling out-of-state. Ms. Stackhouse also testified that the defendant was hospitalized out-of-state from June 10, 2006 to June 16, 2006, and she produced hospital documents reflecting those dates. Ms. Stackhouse stated that the couple's trip to Maryland continued until June 20, 2006, and that the defendant was extremely ill when they arrived back at home. The witness testified that the defendant was hospitalized again on July 3, 2006. She testified that, during the intervening time, the defendant was a very sick man who "couldn't lift his head off the pillow."

Following her testimony, the State called Mr. Teddy Collingsworth of the District Attorney General's Office for the Third Judicial District as a rebuttal witness. Investigator Collingsworth testified that he met with the victim in the fall of 2007, in an attempt to figure out when the sexual contact witnessed by the grandmother had occurred. According to his testimony, the victim stated that the sexual contact at issue happened in the summer between her seventh and eighth grade school years, which the investigator stated would have been in the summer of 2006. On cross-examination, however, the investigator stated that, according to his notes, if the incident occurred between the victim's seventh and eighth grade years, it would have occurred during the summer of 2007.

Following this testimony, the defense rested and again moved for a judgment of acquittal. The trial court denied the motion on the grounds that, considering the evidence in the light most favorable to the State, a reasonable jury could find that the sexual contact

occurred in June of 2006 as alleged in the Bill of Particulars. The jury was duly charged and retired to deliberate at 4:38 p.m. The jury returned with a verdict at 6:00 p.m. that same day and found the defendant guilty as charged. The jury fixed the fine for the defendant's crime at zero. The defendant was sentenced on July 29, 2010, to nine years in the Department of Correction to be served at one hundred percent.

The defendant filed a timely motion for a new trial on July 30, 2010. The record reflects that this motion was denied by a written order on September 10, 2010. However, there is also a transcript of a hearing that was held concerning the defendant's motion for a new trial, which reflects that the judge orally denied the defendant's motion after hearing arguments from both parties. That transcript is dated September 24, 2010; we assume this date to be erroneous, as logic would dictate, and the hearing appears to reflect, that it was held prior to the entry of the court's written order. Regardless of the actual date of the defendant's hearing, however, on September 20, 2010, the defendant filed a timely notice of appeal from the trial court's written order denying his motion for a new trial, entered ten days previously. This appeal promptly followed.

## ANALYSIS

The defendant raises several challenges to his conviction, including a challenge to the admission of certain expert and impeachment testimony at his trial and a challenge to the sufficiency of the evidence. For the reasons that follow, we deny each of the defendant's claims and affirm the judgment of the trial court.

## I.

The defendant's first claim is that the evidence is insufficient to support his conviction for aggravated sexual battery. "When there is a challenge to the sufficiency of the evidence, the relevant question is whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011); *see also* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." *Id.* (*quoting State* v. *Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). The defendant has failed to carry this burden.

The crime of aggravated sexual battery is defined as "unlawful sexual contact with a victim by the defendant or the defendant by a victim accompanied by any of the following circumstances," one of which is "[t]he victim is less than thirteen (13) years of age." T.C.A.

§39-13-504(a)(4) (2006). "'Sexual contact' includes the intentional touching of the victim's . . . intimate parts . . . if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." T.C.A. § 39-13-501(6). In this case, the victim's direct testimony, standing alone, was sufficient for a reasonable jury to conclude that all of the necessary elements of the crime were present. The victim testified that when she was under thirteen years of age, the defendant engaged in sexual contact with her by placing his mouth on her vagina. No additional evidence was required in order to enable a reasonable jury to conclude that the offense occurred.

The defendant argues that the alleged victim testified (on cross-examination) that the offense did not occur in June of 2006, as alleged in the indictment and the Bill of Particulars. The defendant argues that Dr. Keinath did not testify that the offense occurred (1) against this particular victim or (2) in June of 2006. The defendant argues that Dr. Reardon's testimony was speculative and did not provide any direct evidence that an offense occurred at all, much less during June of 2006. The defendant urges that Ms. Stackhouse testified that no offense ever occurred. These facts, however, are insufficient to establish grounds for reversing the jury's verdict. All of the evidence presented at the defendant's trial which was contrary to the victim's direct testimony, including the victim's testimony on cross-examination, merely sufficed to raise the issue of a conflict between the evidence. "[R]econciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact," *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008).

## II.

The defendant claims that the trial court erred by admitting certain portions of the testimony of the State's expert witness, Dr. Peter Reardon, and by failing to give a special jury instruction regarding this testimony. The decision of whether or not to admit expert testimony rests in the sound discretion of the trial court and will not be overturned on appeal unless the defendant can show that the trial judge abused his discretion by admitting such testimony. *See, e.g.*, *State v. Joshua Lynn Parker*, No. E2008-02541-SC-R11-CD, 2011 Tenn. LEXIS 881 at *26 (Tenn. Sept. 23, 2011) ("We review a trial court's decisions about the admissibility of evidence for an abuse of discretion."). "'Reviewing courts will find an abuse of discretion only when the trial court applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employed reasoning that causes an injustice to the complaining party.'" *Id.* (quoting *State v. Banks*, 271 S.W.3d 90, 116 (Tenn. 2008)). No such abuse of discretion has been shown here.

The defendant's objection to the portion of Dr. Reardon's report referencing the possible penetration of the victim's vagina by a digit was sustained by the trial court as

pertaining to matters outside of the Bill of Particulars. Consequently, on appeal, the defendant's complaint is limited to the portion of Dr. Reardon's testimony to the effect that "oral penetration" "could have caused" the opening of the victim's vagina. The defendant asserts that the doctor "did not express th[is] opinion with a reasonable degree of medical certainty." However, the record reflects otherwise. The transcript shows that the doctor answered, "[i]t could have caused that" in response to the question "[c]an you say, Doctor, within a reasonable degree of medical certainty whether or not oral penetration could have caused that [hole in the victim's hymen]?"

Dr. Reardon was qualified as an expert in pediatric gynecology without objection by the defendant. Once so qualified, he was permitted, pursuant to Tennessee Rule of Evidence 702, to "testify in the form of an opinion or otherwise." It was therefore permissible for him to opine as to possible causes of the victim's injury. The trial court did not abuse its discretion by admitting this testimony.

The defendant further claims that the trial court erred by failing to include a limiting jury instruction concerning the weight to be given this expert testimony. According to the defendant, "[w]hen expert testimony is introduced, a specific instruction regarding the limited value and weight of this testimony *must* be included in the jury charge" (emphasis in original), *citing State v. Howse*, 634 S.W.2d 652 (Tenn. Crim. App. 1982). This assertion reflects an incorrect understanding of the applicable legal standards. *Howse* did not generally require that limiting instructions be given at trial whenever expert testimony has been introduced. Rather, *Howse* upheld one judge's decision to provide such an instruction on the particular facts of that case, against the defendant's challenge that the judge's instruction was an improper commentary on the evidence. In the course of so doing, the *Howse* court did comment that "finder[s] of fact should receive expert opinion with caution" because such "testimony is speculative." *Id.* at 657. However, this commentary did not serve to alter or amend the established law concerning the provision of special jury instructions. That law is clear. "The refusal to grant a special request for an instruction is error only when the general charge fails to fully and fairly provide the applicable law, considering the instructions in their entirety and reading them as a whole rather than in isolation." *State v. Dorantes*, 331 S.W.3d 370, 390 (Tenn. 2011).

We can find no indication in the record prior to the defendant's motion for a new trial that the defendant objected to the jury instructions or requested a special instruction concerning the expert testimony provided by Dr. Reardon. Consequently, this issue could be deemed waived. *See* Tenn. R. App. Pro. 36(a) (2011). However, even if the defendant had preserved this issue, our review of the record leads us to the conclusion that the general charge fully and fairly stated the applicable law concerning the consideration of expert testimony by the jury in this case. Consequently, the trial court's refusal to provide a special

instruction (had it received a timely request for one from the defendant) would not have been in error.

## III.

The defendant claims that the trial court erred by admitting the testimony of Doris Stackhouse's therapist during the prosecution's case-in-chief. The defendant further claims that the therapist's impeachment testimony was inadmissible under the collateral fact rule and that the trial court erred by failing to instruct the jury to consider the therapist's testimony evidence only for purposes of impeachment (and not as substantive evidence).

With respect to whether it was permissible to present the testimony of Dr. Keinath during the State's case-in-chief, "[t]he credibility of a witness may be attacked by any party, including the party calling the witness." *State v. Rice*, 184 S.W.3d 646, 681 (Tenn. 2006) (citing Tenn. Rule Evid. 607). Statements of witnesses may be impeached by extrinsic evidence of a prior inconsistent statement under the proper circumstances. *See* Tenn. R. Evid. 613(b). That extrinsic evidence may include the testimony of another witness as to the content of the prior oral statement. *See Rice*, 184 S.W.3d at 681. "The proper foundation for admission of extrinsic evidence of a prior inconsistent statement is to: (1) provide the witness an opportunity to admit, deny, or explain the prior inconsistent statement; (2) refresh the witness' memory; and (3) allow the witness to respond intelligently to the impeachment attempt." *Id.*

In this case, Dr. Keinath's testimony was taken only after Ms. Stackhouse had taken the stand, been declared a hostile witness, and made certain factual statements during her ensuing cross-examination by the State. The State confronted Ms. Stackhouse with the prior inconsistent statement, refreshed her memory concerning it, and afforded her the opportunity to respond to whether or not she had made the statement. The proper foundation for impeachment by extrinsic evidence of a prior inconsistent statement had been laid.

When a witness has been declared hostile during the State's case-in-chief, we can discern no reason that the State may not impeach the testimony of the hostile witness during its case-in-chief. While the defendant asserts that it was improper for the State to call Ms. Stackhouse as a witness, knowing that her position would be adverse to the State's position, solely for purposes of impeaching her with an inconsistent statement, the defendant has made no showing that the State was aware that Ms. Stackhouse's testimony would be adverse to its case prior to calling her as a witness. Moreover, the defendant has cited to no caselaw in support of his argument concerning this proposition.

With respect to whether or not Dr. Keinath's testimony was inadmissible as relating

to a collateral fact, the general rule is that "the statement of a witness made during cross-examination as to a collateral fact may not be impeached by extrinsic evidence of a prior inconsistent statement as to that fact." *State v. Leach*, 148 S.W.3d 42, 56 (Tenn. 2004). The purpose of this rule is to prevent the extensive strain on judicial resources that would inevitably occur if every fact, no matter how trivial, in a witnesses' testimony could be controverted through extrinsic evidence. "A fact is collateral for purposes of the collateral fact rule if it is relevant only because it contradicts something said in court; it is not collateral if it is relevant independent of any contradiction." *Id.* (citing Neil P. Cohen, Sarah Y. Sheppeard & Donald F. Paine, **Tennessee Law of Evidence** § 6.07[4][c] (4th ed. 2000)). A fact is not collateral if it provides a reasonable inference concerning the principal matters in dispute. *See id.*

In this case, Ms. Stackhouse's statement went straight to the heart of the principle matter of dispute. Ms. Stackhouse asserted during her cross-examination that she had never walked into a room and seen the victim nude on their bed being fondled by the defendant. This was not a collateral fact. This fact was of crucial significance to a jury's determination of whether or not the crime alleged in the indictment occurred. Because the witness' statement "relate[d] to facts relevant to a material issue at trial," *id.*, the trial court did not err by failing to exclude Dr. Keinath's testimony on grounds that it pertained to a collateral fact.

Concerning the trial court's failure to instruct the jury that Dr. Keinath's testimony should be considered only for purposes of impeachment, we find that this issue has been waived by the defendant's failure to request such a limiting instruction. Tenn. R. App. Pro. 36(a) (2011); *see also e.g., State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000) ("A trial court, however, generally has no duty to exclude evidence or to provide a limiting instruction to the jury in the absence of a timely objection."). However, precedent establishes that such an error may still constitute grounds for reversal in exceptional cases. As the Tennessee Supreme Court has explained, precedent "clearly establish[es] that prior inconsistent statements offered to impeach a witness are to be considered only on the issue of credibility, and not as substantive evidence of the truth of the matter asserted in such statements." *State v. Reece*, 637 S.W.2d 858, 861 (Tenn. 1982). Consequently, notwithstanding the general rule that the omission of a jury instruction provides no grounds for error unless the instruction has been requested by a party, the *Reece* court held that "if the State's case is weak and the prior inconsistent statements are extremely damaging, the failure to give the limiting instruction may amount to fundamental error constituting grounds for reversal, even in the absence of a special request."

However, we have little difficulty concluding that the *Reece* rule concerning fundamental error is inapplicable to this case. The State's case was not weak. It was supported by the direct testimony of the victim and by the expert testimony of her pediatric

gynecologist. The victim's testimony was corroborated in a number of important respects by statements she made to various investigators during the course of the investigation.

Indeed, the primary area of dispute at trial with respect to the State's case was not whether the defendant committed an aggravated sexual battery on his granddaughter, but whether this assault occurred on the particular date (an unspecified day in June 2006) as alleged in the indictment and Bill of Particulars. However, the date on which the offense occurred is not an element of the offense of aggravated sexual battery, so long as it is established that the victim was under thirteen years of age. Consequently, a date need not generally be stated in an indictment, *see State v. Shaw*, 82 S.W. 480, 480 (Tenn. 1904), and when an indictment does contain a date, the proof at trial generally need not be limited to the events occurring on the date listed on the indictment, *see State v. West*, 737 S.W.2d 790, 792 (Tenn. Crim. App. 1987). An indictment need only sufficiently inform the defendant of the charges against him to the degree necessary to protect him from future prosecutions for the same offense, and unless a defendant can show he has suffered a substantial deprivation of his rights, any variance between the date in the indictment and the date proved by the evidence is harmless. *West*, 737 S.W.2d at 793.

Likewise, while the date of "the only day in June, 2006, that the defendant was caught by his wife in the act of performing oral sex on his granddaughter" was specified as the date of the offense in the Bill of Particulars, this fact also does not suffice to transform the date of June 2006 into an element of the offense. The purpose of a Bill of Particulars "is to alert criminal defendants as to how the State will proceed with the litigation. The purpose is not to lock the State into a specific theory of prosecution." *State v. Sherman*, 266 S.W.3d 395, 409 (Tenn. 2008). "If the State significantly deviates from the bill of particulars at trial, this potentially could be a ground for reversal, but only if a defendant can, as stated, demonstrate prejudice in the form of unfair surprise or inability to prepare an adequate defense." *Id.*

Consequently, the primary source of dispute between the parties at trial – the date on which the unlawful sexual contact occurred – did not relate in any way to the strength of the State's case against the defendant. That case, supported by multiple witnesses, was quite strong. The prior inconsistent statements attested to by Dr. Keinath may have done additional damage to the defendant's cause, but this damage was primarily the destruction of the credibility of the only witness at trial, Ms. Stackhouse, whose testimony could even remotely be construed as inferring that no sexual contact had ever occurred between the defendant and the victim while she was still under the age of thirteen (and even Ms. Stackhouse did not testify to that fact directly, she testified only that she had never witnessed such an event). As any harm done to Ms. Stackhouse's credibility by the prior inconsistent statements would still have been done even had the judge provided a proper limiting instruction, we have little difficulty concluding that the prior inconsistent statements were

not "extremely damaging" in any improper way, as required by *Reece*. Because the State's case against the defendant – with respect to establishing all the necessary elements of the offense – was strong and any improper damage to the defendant's case (*i.e.,* damage other than the diminishment of Ms. Stackhouse's credibility as a witness) that may have been caused by the judge's failure to issue a proper limiting instruction was slight, the defendant's claim that the trial court committed reversible error by failing to instruct the jury that Dr. Keinath's testimony should be considered only for purposes of impeachment is denied.

## IV.

Finally, the defendant claims that the trial court erred by failing to grant the defendant's motion for a judgment of acquittal at the close of the State's proof and at the close of all the evidence. "The rule for determining a motion for a directed verdict requires the trial judge and the reviewing court on appeal to look at all of the evidence, to take the strongest legitimate view of it in favor of the opponent of the motion, and to allow all reasonable inferences from it in its favor; to discard all countervailing evidence, and if then, there is any dispute as to any material determinative evidence, or any doubt as to the conclusion to be drawn from the whole evidence, the motion must be denied." *State v. Thompson*, 549 S.W.2d 943, 946 (Tenn. 1977). "The duty of the trial judge and the reviewing court on the determination of a motion for a judgment of acquittal is the same as for a motion for a directed verdict." *State v. Torrey*, 880 S.W.2d 710, 712 (Tenn. Crim. App. 1993).

As we previously stated when examining the sufficiency of the evidence, the direct testimony of the victim in this case, given at the outset of the trial, sufficed to establish all of the elements of the offense. Looking at this testimony in its strongest light and discarding all contrary evidence, the trial court properly denied the defendant's motion for a judgment of acquittal both at the close of the State's case and the close of all the evidence. The defendant is therefore entitled to no relief on this issue.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE