# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
November 27, 2012 Session

## STATE OF TENNESSEE v. QUINCY D. MOUTRY, ALIAS

**Appeal from the Criminal Court for Knox County**
**No. 93066    Jon Kerry Blackwood, Judge**

---

**No. E2011-02531-CCA-R3-CD - Filed June 17, 2013**

---

The Defendant, Quincy D. Moutry, alias, was convicted by a jury of multiple offenses arising from a carjacking in March of 2008. He received an effective twenty-seven-year sentence for those convictions. In this direct appeal, the Defendant argues that the trial court erred by allowing the State to amend the date of the offenses alleged in the presentment after the jury had been sworn. Following our review of the record and the applicable authorities, the judgments are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and CAMILLE R. MCMULLEN, JJ., joined.

John M. Boucher, Jr., Knoxville, Tennessee (at trial); and Cameron D. Bell, Knoxville, Tennessee (on appeal), for the appellant, Quincy D. Moutry, alias.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Ta Kisha M. Fitzgerald, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### FACTUAL BACKGROUND

By presentment returned on November 3, 2009, a Knox County grand jury charged the Defendant with carjacking, aggravated robbery, and possessing a firearm with the intent to go armed during the commission of a dangerous felony. Tenn. Code Ann. §§ 39-13-402, -13-404, -17-1324. The presentment specified the date for the offenses as "[o]n or about the 13th day of March, 2008[.]" Six Knoxville Police Department (KPD) officers, the victim,

and a Burger King employee who witnessed the carjacking were listed as witnesses on the presentment. The case proceeded to trial on April 12, 2011.

The transcript reflects that the following occurred at the beginning of the Defendant's trial on these charges: "[P]rospective jurors were brought into the courtroom, a jury was selected and sworn, the rule was requested and witnesses were excused from the courtroom, the [c]ourt gave the jury preliminary instructions regarding trial procedures, the jury retired from the courtroom at 11:15 a.m., and recess was taken." The prosecutor then stated, "Your Honor, on my indictment, and I don't know if the record's going to reflect this or not, but I know that we were in court before, and I've got written down here that we made a motion to amend the indictment to allege the date of March 4th, 2008." Defense counsel replied that he had not been served with an amendment. The prosecutor continued that she made a motion that was never ruled on, explaining to defense counsel, "I know that we came in, we had an issue because you had pulled out some records to show that [the Defendant] could not have done it on the 13th, and I remember pulling out an offense report showing you that the actual date of offense was March 4, 2008." Defense counsel reiterated that he was not aware of any amendment and said, "we're under the obligation to pursue that that's [a] fatal flaw in the indictment."

The trial court then asked defense counsel if he gave a notice of alibi, and he responded that he had not and noted that the Defendant was in custody on March 13. The prosecutor then claimed that the defense was "on notice that the date of offense was March 4th, in light of the discovery that's been turned over." The jury returned to the courtroom. The trial court permitted the amendment, allowing the charges to be read as "a day in March." Defense counsel preserved his objection for the record, stating that the charges had already been read to the jury and that the amendment was "material."

Because the Defendant challenges only the amendment of the indictment on appeal, we will only provide a brief recount of the facts presented at trial and of those relevant to the issue. The victim testified that the Defendant called her and stated that he had recently broken up with his girlfriend, so they arranged to meet at a nearby Burger King parking lot. Upon the victim's arrival at the Burger King, the Defendant exited a Durango and got inside her vehicle. After communicating with someone by text message, the Defendant exited the victim's vehicle, and another man came from the Durango and got inside the car. This man pulled a gun on the victim, and as he was attempting to cock the weapon, she started to get out of the car. However, another individual, who also came from the direction of the Durango, came up behind her and started pistol-whipping her, trying to force her back inside the car. When someone exited the Burger King, the men "jumped in [the victim's] car and took off." The victim phoned the Defendant and then 911. After speaking with 911, she again called the Defendant and was on the phone with him when police arrived. The police

soon found the victim's vehicle, which had been abandoned nearby. A copy of the victim's phone records and a printout of the relevant 911 calls on March 4, 2008, were entered into evidence.

The victim was unable to identify anyone on the scene but was later shown a photographic array. After viewing the line-up, she identified the Defendant and signed and dated the identification form March 14, 2008. She was never able to identify the other two individuals. When asked on cross-examination about the dates of her identifications on scene and in the photographic arrays, the following colloquy occurred between the victim and defense counsel:

Q. You also indicated you were too upset to go identify some folks that they had rounded up to take a look at, correct?
A. Uh-huh.
Q. Same day, right after this happened, correct?
A. I meet with the detective, I believe it was the day after.
Q. Okay. And then eventually you saw photo line-ups of --
A. Yes, sir.
Q. -- folks the day after as well?
A. Yes, sir.

The identification form was admitted as an exhibit.

Joshua Rentz testified that he was working at Burger King on March 4, 2008. About 9:30 p.m., he was waiting on his parents to pick him up when he heard screaming in the parking lot. He "went around the corner of a red vehicle that was sitting there" and "saw a young woman getting pulled into a car by a black male." He then observed someone point a gun out the window of the vehicle. Mr. Rentz said that, when he started towards the vehicle, the men let the woman go. According to Mr. Rentz, there were a total of three black males involved in the altercation at the suspect vehicle. He went back inside and told someone to call 911, and upon his return to the parking lot, he saw the suspect vehicle with three men inside and another red sport utility vehicle leaving the scene.

KPD officers later initiated a traffic stop of the Red Durango seen at the Burger King. A suspect emerged from the passenger's side of the vehicle and fled, ultimately evading arrest. The officers did find the Defendant's phone inside the Durango, and records showed that the phone had been used to call the victim just prior to the incident at the Burger King.

At approximately 1:00 a.m. on March 5, 2008, the Defendant called the police and reported his Red Durango missing. KPD Officer Darrell Sexton went to the Defendant's

residence and spoke with the Defendant. The Defendant refused to permit Officer Sexton into the residence and spoke to him through a security door. The Defendant told Officer Sexton that a friend had borrowed his Durango, but had failed to return it, and that the Defendant's phone was still inside the car. Officer Sexton stated that the Defendant's clothing was "consistent" with the clothing of the person who had evaded arrest earlier that evening.

KPD Officer Joshua Shaffer testified that, after the victim identified the Defendant in the photo line-up, he interviewed the Defendant about the carjacking. The Defendant admitted to knowing the victim but denied any involvement in the events. Before cross-examination of Officer Shaffer, the defense reiterated that he "had prepared a defense around" the March 13, 2008 date and that to do so would require the defense to establish that the Defendant was arrested on a certain date. The trial court permitted the defense to ask the officer about that arrest and did not allow that inquiry to "open[] the door to discuss [the Defendant's] entire criminal history." Officer Shaffer then testified that the Defendant was arrested on March 10, 2008, on an unrelated charge and that he remained in custody on that charge until March 17, 2008. On re-direct examination, Officer Shaffer confirmed that the date of this offense was March 4, 2008.

Four other KPD officers also testified and provided details about the carjacking and subsequent investigation. At the close of the State's proof, defense counsel moved for a judgment of acquittal, again arguing that he had prepared a defense for the March 13, 2008 date listed in the presentment and that the defense had proven that the Defendant was in custody on that day. Defense counsel noted that the photo identification was signed by the victim and dated March 14, 2008. According to the defense, the victim confirmed on cross-examination that she was presented with the photo array the day after the incident. Defense counsel continued: "[W]hen it is listed specific to a case like this where a specific time and place is very important to that indictment, especially when the defense prepares its defense on a variance in the dates." Moreover, defense counsel noted that the State had never filed any demand for a notice of alibi as required by Tennessee Rule of Criminal Procedure 12.1.

The prosecutor replied that the date "need not be stated in the indictment" and, unless time was a material element of the offense, it was sufficient for the charge to allege "on any day before the finding of the indictment[.]" The prosecutor explained, "It's the question about the offense. It's not about the defense." Moreover, the prosecutor argued that the defense was on notice of the correct date of the offenses in light of the discovery materials turned over to the Defendant, including the phone records, 911 call, and numerous other documents. The prosecutor also noted that, in the Defendant's statement to Officer Shaffer, there were "repeated discussions about the incident and the day of the incident[.]"

The motion for a judgment of acquittal was denied, and the Defendant did not present any proof. After deliberating, the jury found the Defendant guilty as charged. Thereafter, the trial court imposed an effective twenty-seven-year sentence for these convictions. This appeal followed.

ANALYSIS

On appeal, the Defendant continues to challenge the amendment to the date specified in the presentment. The Defendant's argument is essentially two-fold: the propriety of the amendment to the indictment and a possible variance between the indictment and the proof. Specifically, citing Tennessee Rule of Criminal Procedure 7(b)(2), he contends that the trial court committed error by amending the presentment without the Defendant's consent after jeopardy had attached. He then cites the Fifth Amendment "grand jury guarantee" in support of the proposition that, once an indictment has been returned by a grand jury, the charges may not be impressibly broadened. He continues, "Deprivation of such a basic right is far too serious to be treated as nothing more than a variance and then dismissed as harmless error." Finally, he asserts that it could not be determined from the on "a day in March" language whether the verdict was unanimous as required by Rule 31(a) of the Tennessee Rules of Criminal Procedure. The State counters that the amendment was "unnecessary" and, moreover, that any error committed by the trial court was harmless.

Under both the federal and state constitutions, a criminal accused is entitled "to be informed of the nature and cause of the accusation" against him. See U.S. Const. amend. VI; see also Tenn. Const. art. I, § 9. This requirement is met when an indictment charging an accused "provides sufficient information (1) to enable the accused to know the accusation to which answer is required, (2) to furnish the court adequate basis for the entry of a proper judgment, and (3) to protect the accused from double jeopardy." State v. Hill, 954 S.W.2d 725, 727 (Tenn. 1997). Further, an indictment is statutorily required to "state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment." Tenn. Code Ann. § 40-13-202.

Rule 7(b)(2) of the Tennessee Rules of Criminal Procedure provides that, before jeopardy attaches, a trial court may allow amendment to an indictment without the defendant's consent when "no additional or different offense is charged and no substantial right of the defendant is prejudiced." However, when a defendant properly objects, an indictment cannot be amended after jeopardy attaches. State v. Carter, 121 S.W.3d 579, 587 n.5 (Tenn. 2003) ("Tennessee rule of Criminal Procedure 7(b) only allows for an indictment to be amended without consent of the defendant if it is done before jeopardy attaches.");

-5-

State v. Lindsey, 208 S.W.3d 432, 439 (Tenn. Crim. App. 2006); State v. Lane, 673 S.W.2d 874, 875 (Tenn. Crim. App. 1983).

Under our case law, we must first determine if the amendment was an "unnecessary" amendment. In Lindsey, the indictment erroneously charged that the defendant did unlawfully "sell and, or deliver" cocaine. 208 S.W.3d 432. Our court held that while the indictment was defective by alleging two separate and distinct offenses, the defendant's motion to dismiss the indictment was waived because it was not raised prior to trial pursuant to Tennessee Rule of Criminal Procedure 12(b)(2) and (f). Id. at 439. Defense counsel made a tactical decision not to raise the issue until after jeopardy had attached.

In Lindsey, the defendant also argued on appeal that the trial court erred by granting the State's motion to amend the indictment over the defendant's objection and after jeopardy had attached. The amendment deleted the words "and, or deliver" and thus resulted in the indictment charging the defendant only with the sale of cocaine. The defendant made his motion to the trial court to dismiss the improperly worded indictment midway through the direct examination of the police officer who directly controlled the confidential informant who purchased cocaine from the defendant. It appears that the State promptly moved to amend the indictment at the same time that the trial court denied the defendant's motion to dismiss the indictment. Thus, the amendment came prior to the close of the State's case-in-chief.

In Lindsey, our court held that the trial court erred by amending the indictment over the defendant's objection and after jeopardy had attached. However, we held that the error was harmless beyond a reasonable doubt because: (1) removal of the "delivery" charge did not impermissibly change the charged offense; and (2) the defendant had ample notice of the offense charged including the facts of the sale, the date of the offense, the amount of and type of substance sold, and the statute which was violated. Id. at 441.

In Lane, the motion to amend the indictment was also made after jeopardy attached. 673 S.W.2d at 875. The defendant was charged in count one of the indictment with driving a vehicle without a license on January 23, 1982. In count two, he was charged with driving under the influence (DUI) committed on January 23, 19 __. In count 3, it was alleged that on January 23, 1982, he committed the DUI alleged in count two at a time when he had two prior convictions for DUI. After reading the indictment to the jury and noticing the blank space in count two, the prosecutor moved to amend the indictment to insert "82" into the blank space. The motion was granted over the defendant's objection.

The defendant argued on appeal that without the full date in count two, that count was insufficient as a matter of law, and because the trial court erred by amending the indictment

after jeopardy had attached, the conviction should be reversed. Our court held that since there was no requirement to allege an exact date in connection with the crime charged, an amendment was unnecessary, and therefore allowing "an unnecessary amendment did not constitute reversible error." Id. at 875. Our court stated, "[w]e thus decline to reverse on the basis of the typographical omission in count two or on the basis of the putative amendment to that count." Id.

In State v. Brown, the defendant was convicted of concealing stolen property, a 1976 Pontiac Firebird. 795 S.W.2d 689 (Tenn. Crim. App. 1990). The indictment alleged the VIN to be "2S87M6N598021," and the State moved to amend the indictment, after jeopardy had attached, to add an additional "8" to the VIN. Our Court rejected the defendant's argument that the trial court erred by permitting the amendment. In so doing, we relied on Lane, and held,

> [a]mending an indictment to correct a typographical omission which was an unnecessary amendment is an exception to the rule that amendments are not allowed over the objection of a defendant once jeopardy has attached.

Id. at 695 (emphasis added).

In the case sub judice, it is clear that, if the presentment had not included a specific date for the charged offenses, an amendment to provide the correct date would have been unnecessary. Pursuant to Tennessee law, "[t]he time at which the offense was committed need not be stated in the indictment, but the offense may be alleged to have been committed on any day before the finding of the indictment, or generally before the finding of the indictment, unless the time is a material ingredient in the offense." Tenn. Code Ann. § 40-13-207. Further, time is not a "material ingredient" of any of the offenses for which the Defendant stands convicted. See Tenn. Code Ann. §§ 39-13-402, -13-404, -17-1324. In this case, the State needed only to allege that the offenses were committed prior to the finding of the presentment. See State v. Byrd, 820 S.W.2d 739, 740 (Tenn. 1991).

Also, if the amendment served only to correct a "typographical error," then it could be an "unnecessary" amendment and, therefore, not error. The State cites to State v. Brent Richardson, as providing a similar factual scenario to that presented here and standing for the proposition that an "unnecessary amendment" includes a change in the date of the offense. No. W2009-00778-CCA-R3-CD, 2010 WL 2473299 (Tenn. Crim. App. June 17, 2010). In Richardson, the first five counts of a seven-count indictment, listed the date of the offenses as March 16, 2007; Count 6 alleged an offense date of November 13, 2007; and Count 7 provided an offense date of October 31, 2007. The trial court allowed the State to amend the indictment after jeopardy had attached and over the Defendant's objection to

reflect the date of March 16, 2007, for all seven of the offenses. On appeal, this court, citing to Brown and Lane, held that the trial court did not err in allowing the amendment for correction of a "typographical omission." 2010 WL 2473299, at *5. The Richardson court reasoned, "The proof at trial clearly established that all of the offenses occurred on March 16, 2007, and there is no showing that the defendant was either surprised or prejudiced by these amendments." Id.

However, in this case, the correct date was not charged in any of the counts, instead, all counts charged the same, incorrect day. We do not conclude that an erroneous date which conclusively identifies another day from the one intended is always a "typographical error." We can comfortably assume that the prosecutor's trial preparation was sufficient to know the facts of the case because of the witnesses called to testify and the exhibits to be entered. Reading the indictment prior to trial would have necessarily revealed a problem that presumably could have been readily cured prior to jeopardy attaching. See State v. Mark A. Ammons, No. M2006-00286-CCA-R3-CD, 2007 WL 1790450, at *3 (Tenn. Crim. App. June 21, 2007). In fact, the prosecutor in this case indicated her awareness of the error and recalled requesting an amendment to the indictment to correct the date. For unknown reasons, it does not appear that the motion was ever reduced to writing. Likewise, an order granting or denying the motion prior to the jury being sworn is lacking in the record.

Nonetheless, even if the trial court erred, such an error has been deemed harmless beyond a reasonable doubt in certain circumstances. See Lindsey, 208 S.W.3d at 441. If the trial court in the case sub judice had denied the State's motion to amend the presentment, the trial would have proceeded to its conclusion with charges that alleged that date of "[o]n or about the 13th day of March, 2008[.]" The proof clearly established that the offenses were committed on March 4, 2008, and that the Defendant was incarcerated on an unrelated charge on March 13, 2008. The Defendant moved for a judgment of acquittal after the State closed its proof and the presentment had been "amended." It appears from the record, however, that Defendant intended to do so prior to the motion to amend the date, presumably on the basis of a fatal variance between the allegations in the presentment and the proof presented at trial.

This court has held that if the dates alleged in the indictment are not "essential to proving the offense or to the imposition of a defense," then the State is "not required to strictly show" that the offense occurred within those dates. State v. Howse, 634 S.W.2d 652, 657 (Tenn. Crim. App. 1982). Moreover, "[a] variance between an indictment or a subsequent bill of particulars and the evidence presented at trial is not fatal unless it is both material and prejudicial." State v. Shropshire, 45 S.W.3d 64, 71 (Tenn. Crim. App. 2000); see also State v. Moss, 662 S.W.2d 590, 592 (Tenn. 1984). "A variance is not material when substantial correspondence exists between the proof and the indictment." State v. Osborne, 251 S.W.3d 1, 15 (Tenn. Crim. App. 2007).

As previously noted, time is not a material ingredient of the offenses for which the Defendant was convicted. In the trial court, the Defendant contended that, given his assertion of an alibi defense, the date specified in the indictment was material to preparation of his defense. This is not a case where there is a question of whether the statute of limitations would bar the prosecution or where a change in a statute had gone into effect before or after the commission of the offense. See State v. West, 737 S.W.2d 790, 792-93 (Tenn. Crim. App. 1987). The Defendant reported his vehicle stolen in the early morning hours of March 5, 2008. He was later questioned by Officer Shaffer about the carjacking. Moreover, the State correctly points out that the discovery materials provided to the defense overwhelming established that the offenses occurred on March 4, 2008. We also agree with the State that the victim in this case never unequivocally stated that the offenses occurred on March 13, 2008.

It appears that defense counsel made a tactical decision not to raise the issue until after jeopardy had attached, see Lindsey, 208 S.W.3d at 439, knowing that a change in the date prior to that time would have been permitted, see Tennessee Rule of Criminal Procedure 7(b). "A defendant suffers no harm from the variance unless it affects his substantial rights. State v. Moss, 662 S.W.2d 590, 592 (Tenn. 1984).

> [A] variance does not prejudice the defendant's substantial rights (1) if the indictment sufficiently informs the defendant of the charges against him so that he may prepare his defense and not be misled or surprised at trial, and (2) if the variance is not such that it will present a danger that the defendant may be prosecuted a second time for the same offense; all other variances must be considered to be harmless error.

Id. We conclude that substantial rights of the Defendant were not affected by any alleged variance, and he has not shown any prejudice. Thus, any variance between the time alleged in the presentment and the time proven at trial is not a material variance. See State v. Thomas Dee Huskey, No. E1999-00438-CCA-R3-CD, 2002 WL 1400059, at *190 (Tenn. Crim. App. Oct. 11, 2002) (finding that it was not a material variance when the indictment stated the offense occurred between August 23 and September 6, 1991, and the victim testified that it occurred during the second week of August); State v. Brown, 992 S.W.2d 389, 392 (Tenn. 1999) (finding that although the State elected an offense between April 11 and June 30, 1993, and the proof showed that the offense happened before April 11, 1993, the evidence was not "legally insufficient in this regard" because the State was not required to prove an offense was committed on a specific date); see also State v. Vickers, 985 S.W.2d 1, 9 (Tenn. Crim. App. 2002) (noting that it was "immaterial" that the indictment alleged the offense was committed in April 1990, while the proof at trial showed that it was committed in August 1990, because both dates were before the indictment was filed).

The Defendant raises two additional arguments on appeal, one citing his Fifth Amendment "grand jury guarantee" and the other citing jury unanimity as required by Rule 31(a) of the Tennessee Rules of Criminal Procedure. Because these issues were not presented in the trial court, they are waived on appeal. The Defendant makes no argument that this court should review these issues as plain error, and we see no reason to do so sua sponte. The Defendant has waived these issues by failing to raise them below.

## CONCLUSION

In accordance with the foregoing reasoning and authorities, the judgments of the trial court are affirmed.

_____
D. KELLY THOMAS, JR., JUDGE